

**Sean R. Kelly**
(973) 622-4801
skelly@saiber.com

November 29, 2017

**BY ELECTRONIC FILING**
Honorable Karen M. Williams, U.S.M.J.
United States District Court for the District of New Jersey
Mitchell H. Cohen U.S. Post Office & Courthouse Building
One John F. Gerry Plaza
Camden, New Jersey 08101

      Re:    *Sabinsa Corp. v. Herbakraft, Inc. & Prakruti Prods. Pvt. Ltd.*,
             **No. 1:14-cv-04738-RBK-KMW (D.N.J.)**

Dear Judge Williams:

      We, along with our co-counsel Arent Fox LLP, represent Plaintiff Sabinsa Corporation ("Sabinsa") in the above matter. Pursuant to Federal Rules 26, 30, and 34, Local Rule 37.1, and the Court's Amended Scheduling Order (ECF No. 108),[1] we write to respectfully request the following relief for the reasons set forth below:

- Prakruti should produce responsive documents from its affiliate, Prakruti Foods, which was used to conceal shipments of the Accused Product.
- Prakruti should designate a witness to explain why it did not retain dozens of responsive samples.
- Prakruti cannot withhold relevant, responsive documents just because they relate to foreign sales where ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
- Prakruti should designate a witness to explain how it failed to collect and produce a critical email showing willful violation of the Settlement Agreement.
- Sabinsa should not be required to provide testimony directed to prong 1 of the "Accused Products" definition and the '415 patent because it is outside the scope of permissible discovery—Prakruti stipulated to the validity of the '415 patent.

---

[1] As the Court is aware, the Amended Scheduling Order requires "[a]ll submissions" related to "any remaining discovery disputes" to "be filed by **November 29, 2017.**" ECF No. 108, at 1. This consolidated submission addresses all of Sabinsa's disputes.

Honorable Karen M. Williams, U.S.M.J.
November 29, 2017
Page 2

### I. PRAKRUTI CANNOT WITHHOLD CRITICAL INFORMATION

Even within the narrow scope of the Court's allowed discovery, Prakruti refuses to produce relevant and responsive documents and testimony based on thin procedural objections and arbitrary line-drawing. For the reasons below, Prakruti should be compelled to produce responsive documents and information.

#### A. Prakruti cannot withhold information about its efforts to cover up violations of the Settlement Agreement.

Third-party discovery, which was resisted by Prakruti, has shown that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ When asked to produce responsive documents from Prakruti Foods, Prakruti refused with no explanation. The Court should compel production from Prakruti Foods.

In interrogatory responses, Prakruti stated that its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1 at Suppl. Interrog. Resp. No. 2. Importantly, Prakruti stated that it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* Third-party discovery from TR Nutritionals,[2] however, shows that ▮▮▮▮▮▮▮▮▮▮▮▮



[3]

---

[2] "TR Nutritionals is the exclusive U.S. distributor of industry-leading Prakruti Products." http://trnutritionals.com/ (Ex. 2).

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Honorable Karen M. Williams, U.S.M.J.
November 29, 2017
Page 3



Two weeks after the Settlement Agreement was executed, in an email produced by TR Nutritionals, it is explained that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 3 at TR0141 (Jan. 21, 2015).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

This correspondence is troubling for a number of reasons. ***First***, it shows that Prakruti's interrogatory responses may not be accurate ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 1 at Suppl. Interrog. Resp. No. 2), then why is it that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 3 at TR0140. ***Second***, the correspondence shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ***Third***, Prakruti is still withholding documents related to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[4]

Prakruti cannot use the subterfuge of an affiliate to ship its products and then shield discovery from that affiliate. Sabinsa's document requests broadly define the term "Prakruti" to mean "Prakruti Products Pvt. Ltd., including ***any and all affiliates***, subsidiaries, and predecessors or successors thereof . . . ." Ex. 5, at 2 (emphasis added). Prakruti did not object to this definition and therefore waived its right to lodge new objections about Prakruti Foods. *See* Ex. 6 at 4–6, 9, 10 (objecting to a single definition: "Prakruti objects to the definition of Accused Products . . . ."); Ex. 7, at 2 (same). More importantly, the Settlement Agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF No. 39-2, Ex. A ¶ 1.2 (emphasis added). The Settlement Agreement also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[4] Prakruti did produce a document related to an adjacent batch. *See* Ex. 4 at PRK0071062 (invoice for PP/CUR/1501003 dated Feb. 14, 2015). But Prakruti has not produced HPLC test results for this PP/CUR/1501003 batch showing its curcuminoid content. Sabinsa has asked for them and the test results are responsive to Document Request No. 2. *See* Ex. 5, at 7.

Honorable Karen M. Williams, U.S.M.J.
November 29, 2017
Page 4

██████████████████████████████████  ██████████████████████████████
██████████████████████████████  *Id.*, ¶ 3.2 (emphasis added).

     Prakruti's eleventh-hour objection is a transparent effort to withhold relevant information about a ███████ shipment made during the enforcement period of the Settlement Agreement. Prakruti must produce responsive documents from Prakruti Foods.

     **B.    Prakruti cannot withhold spoliation information.**

     Prakruti has already spoiled one of its five samples by waiting to ship it until after expiration. Now, Prakruti refuses—based on a thin procedural technicality—to designate a witness for 30(b)(6) Topic No. 8: "The dates, circumstances, and reasons for destruction of any samples from batches of Accused Products and/or Curcuma longa (Turmeric) Products that were not produced in this litigation, including identification of the person(s) who authorized the destruction." Ex. 8, Sched. A at 2.

     In a separate filing, Prakruti argues that "Sabinsa makes reckless and false claims that Prakruti 'spoiled a sample.'" ECF No. 107, at 4. It then claims that "Sabinsa's letter to the Court [dated Nov. 6, 2017] is the first that Prakruti has heard of this allegation." *Id.* Not true. Seven weeks before Prakruti's filing, Sabinsa stated that "PP/ORG/CUR/1507001 is now expired," and "Prakruti's delay in producing samples has already prejudiced Sabinsa because one sample is now expired." Ex. 9, at 4 (Sept. 15, 2017 Letter from T. Anderson).

     Prakruti wrongly states that it was "impossible for Sabinsa's request to have predated the expiration of the [PP/ORG/CUR/1507001] sample." ECF No. 107, at 4. Sabinsa notified Prakruti that it needed samples as early as December 12, 2016. *See* ECF No. 58 at Req. No. 6. After discovery reopened, Sabinsa served an identical request on June 30, 2017. *See* Ex. 5 at Req. No. 6. According to Prakruti, that was too late because the sample expired in June. Not true. Prakruti's curcumin products have a ████████████. *See, e.g.*, Ex. 4 at PRK0058869 (████ ████████████); *id.* at PRK0058871 (same); *id.* at PRK0058887 (same). The PP/ORG/CUR/1507001 batch was manufactured on █████████, according to its manufacturing record (*id.* at PRK0000957); therefore, it did not expire until ██████████—on ***July 26, 2017***. If Prakruti had not delayed, it could have produced the sample before expiration.

     Deposition Topic No. 8 seeks discovery about what happened to the samples that Prakruti did not produce. Prakruti's documents identify over fifty different batches of curcumin. Of those fifty, it preserved and produced only five samples. *See* Ex. 7, at 3–4 (Resp. to Interrog. No. 1). This is troubling because at the start of this litigation, Sabinsa sent a preservation letter asking "Prakruti to take reasonable steps to preserve information potentially relevant to the underlying Proceeding." Ex. 10, at 1 (Sept. 24, 2014 Letter from T. Anderson). Sabinsa specifically identified "Curcumin, curcuminoids, and curcuma longa products or materials" for preservation.

Honorable Karen M. Williams, U.S.M.J.
November 29, 2017
Page 5

*Id.* at 2. Despite this, Prakruti did not preserve dozens of samples, and offered no explanation for this during meet-and-confer calls.

To find out why Prakruti did not preserve its samples, Sabinsa served Topic No. 8 on October 12, 2017. *See* Ex. 8. The deposition was noticed for the same date as the other corporate deposition notice—December 11, 2017—"or another mutually agreed-upon location and date." *Id.* at 1–2. Because Prakruti did not respond within the fact-discovery period, Sabinsa asked whether "Dr. Shiv will be Prakruti's designee for Topic No. 8." Ex. 11, at 1. In response, Prakruti offered a procedural excuse for withholding its witness:

> Sabinsa's Third 30(b)(6) Notice to Prakruti was served after the Court's October 2nd Order and was not part of the agreement reached regarding Prakruti's 30(b)(6) deposition. Accordingly, Sabinsa either needed to conduct a deposition on Topic No. 8 by October 31 or apply for an extension of time with the Court by October 31. Sabinsa did neither. . . .

*Id.* Prakruti seems to believe that it could avoid Topic No. 8 altogether by waiting in silence until after the close of fact discovery, and then arguing that Sabinsa missed its chance for the deposition. On top of that, Prakruti later offered to "horse trade" this deposition topic if Sabinsa agreed to designate a witness for Prakruti's topics. Prakruti cannot hold relevant discovery hostage to force Sabinsa to acquiescence on other (irrelevant) topics. *See infra* § II.

Finally, Prakruti declined to file a motion for protective order regarding Topic No. 8—arguing that *only* Sabinsa must seek relief via a protective order because the Court's instruction did not apply to Prakruti. This is why Sabinsa both moves to compel for its offensive discovery and moves for a protective order for its defensive discovery in this filing.

For these reasons, Prakruti should designate a witness for Topic No. 8 to testify about what happened to its missing samples.

### C. Prakruti cannot withhold information from products sold abroad.

███████████████████████████████████████████ ECF No. 39-2, Ex. A ¶ 3.2 (emphasis added). ████████████████████████████████. Prakruti appeared to understand this and produced responsive documents for products sold to the United States, Taiwan, Brazil, France, Australia, and other countries. *E.g.*, Ex. 4 at PRK0000165.

After reviewing Prakruti's production, Sabinsa identified seventeen batch numbers (from over fifty) for which HPLC testing documents are missing. Ex. 12, at 1–2 (Nov. 17 & 20, 2017

Emails from T. Anderson). In response—and for the very first time—Prakruti now alleges that products sold outside of the United States are irrelevant to this dispute and are not covered by the Settlement Agreement. Because of this, Prakruti is withholding responsive documents concerning at least Batch Nos. PP/CUR/1509001, PP/CUR/1603005, and PP/CUR/1604002 because they were sold to Ireland. Aside from improperly rewriting the Settlement Agreement, Prakruti's new position also lodges new territoriality objections that were never made and are now waived.

For these reasons, Prakruti should produce documents regardless of territoriality concerns.

### D. Prakruti cannot withhold information about the missing Lodaat email.

Sabinsa obtained an email fragment from one of Prakruti's customers (Lodaat) discussing ████████████████████████████████████████████████████████████████████████████. When asked why the email was missing from its production, Prakruti offered no explanation other than to say that the email was somehow "archived." Deposition Topic No. 9 seeks an explanation for why the Lodaat email was not produced, and also seeks information about other responsive documents that may be missing. *See* Ex. 13.

On October 21, 2017 (the day after this Court ordered Prakruti to complete its document production), Lodaat produced part of an email chain between Ms. Samitha Shetty (Prakruti) and Mr. Rajiv Khatau (Lodaat). *See* Ex. 14 at LODAAT 00001.[5] The email was not in Prakruti's production, despite the fact that it was held by a custodian selected by Prakruti, and included ESI search terms agreed by Prakruti. Critically, the email undercuts Prakruti's arguments to the Court that ████████████████████████████████████████. Puzzled by why such an important email was missing from Prakruti's production, Sabinsa asked for the complete email chain and "a detailed explanation for why LODAAT 00001 is missing from the production, what Prakruti will do to correct the mistake for other potentially missing documents, and when Sabinsa will receive the complete document production ordered by the Court." Ex. 15, at 2 (Oct. 24, 2017 Letter from T. Anderson). Three days later, Prakruti provided a one-sentence explanation: "We are unsure why it was missing from Prakruti's document production, but we were not intentionally withholding it." Ex. 16, at 1 (Oct. 27, 2017 Letter from W. Davis). Prakruti then explained that "[t]he missing email was unintentionally not captured during the original document collection . . . . [and] Prakruti found it in an archive." ECF No. 107, at 4.[6] During a meet-and-confer call,

---

[5] After a discussion with Lodaat's attorney about the deleted emails, he withdrew as counsel.

[6] Yesterday, Prakruti revealed that the other emails within the chain of the Lodaat email were deleted, with no further explanation. Prakruti's failure to preserve emails plainly demonstrates that this problem is not limited to the innocent misplacement of a single document, but rather

Prakruti said that it did not know why the Lodaat email was archived even though other emails between the same parties in the same time period were not archived. Prakruti also refused to allow a forensic audit to determine what happened. And finally (weeks after Sabinsa's first request), Prakruti agreed to search the "archive" using the agreed ESI search terms to collect and produce additional responsive documents—something that still has not been completed.

The Lodaat email chain is critical and it is troubling that it was missing from Prakruti's production. The email, standing on its own, proves that Prakruti intentionally violated the Settlement Agreement by ▮



Ex. 4 at PRK0093303. ▮

▮ *Id.*

▮ *See id.* at PRK0093302. In response, ▮ *Id.* at PRK0093301. ▮ . *See, e.g.*, ECF No. 54, at 5. ▮ Ex. 4 at PRK0093301.

---

involves a more fundamental failure by Prakruti to conduct a proper and thorough preservation and collection of responsive documents.

Honorable Karen M. Williams, U.S.M.J.
November 29, 2017
Page 8

In other words, this email documents ███████████████████████████████████████████████████████████████████████████████████████████.

Given the significance of the Lodaat email chain, it is suspicious that all five emails in the chain were archived or deleted. Based upon the agreed search terms and how many other emails between the same people in the same time period were produced, it is not plausible that this one email slipped through the cracks, or was archived in the ordinary course of business, or that the other emails in the chain were innocently deleted. If it was uniquely archived and deleted, that is even more suspicious given that it is the proverbial "smoking gun." Sabinsa is entitled to limited discovery concerning Prakruti's ESI collection efforts to determine why the Lodaat email was not collected, why it was archived, why its chain was deleted, and whether other responsive documents are still missing.

## II. PRAKRUTI'S DEPOSITION TOPICS EXCEED THE SCOPE OF DISCOVERY

Sabinsa is pleased to report that the parties reached an agreement on Dr. Majeed's deposition, so that issue will not be raised during the December 5, 2017 hearing. Unfortunately, the parties are at an impasse regarding Topic Nos. 6, 7, and 10 in Prakruti's 30(b)(6) deposition notice to Sabinsa.[7] Based on the Court's instructions, Sabinsa seeks a protective order for these topics because they exceed the limited scope of discovery allowed in this case and their burden far exceeds their relevance in this case.

Topic Nos. 6, 7, and 10 all seek discovery focused on the '415 patent:

6. The conception and development of the extraction procedure of curcuminoids set forth *in the '415 Patent*.
7. The significance of each process step in the extraction procedure of curcuminoids set forth *in the '415 Patent*.
10. The conception and development of the compositions of curcuminoid combinations set forth *in the '415 Patent*.[8]

Ex. 17, at 2–3. The Court's Opinion, however, allows for only limited discovery and these topics far exceed the allowable scope. The Opinion explains that the definition of Accused Products "has two separate prongs: 1) curcuminoid-containing products claimed by the '415 patent; and 2)

---

[7] Prakruti voluntarily dropped Topic Nos. 8, 9, 11, and 12.

[8] Prakruti proposed modifying Topic Nos. 6 and 10 by striking "conception." Prakruti also explained that "significance" in Topic No. 7 means "importance." Those changes, however, do not significantly modify the scope of the topics.

Honorable Karen M. Williams, U.S.M.J.
November 29, 2017
Page 9

such Curcuma longa (turmeric) product offered for sale by Prakruti." ECF No. 75, at 4. The Court explained that "[t]he parties' submissions have discussed in detail prong 1, whether and how Current Product avoids/infringes the claims of the '415 patent." *Id.* The clear instruction is that the Court does not want discovery on prong 1. But "[t]he parties have not clarified prong 2, and specifically, whether and how the Current Product is the same as/different from the defined Curcuma longa (Turmeric) product that had been sold by Prakruti before the execution of the Agreement." *Id.* The clear instruction is that the Court does want discovery on prong 2. The Court confirmed these clear instructions by rephrasing them "[i]n different terms." *Id.*

> [W]hat is needed is a demonstration of: (1) how Prakruti Current Product sold to third parties specifically compares with prong 2 of the Accused Product definition, as intended by the parties at the execution of the Agreement; (2) how Prakruti's Current Product falls within or outside the Accused Product definition, again as intended by the parties at the time of the execution of the Agreement; and (3) how the limited discovery granted herein has achieved this demonstration.

*Id.* The Court focused on prong 2 and did not mention prong 1 or the '415 patent.

Undeterred, Prakruti served six deposition topics focused exclusively on prong 1 and the '415 patent. Sabinsa timely objected. The three disputed topics here (6, 7, and 10) are far outside the scope of permissible discovery because they are limited to the conception and development of the '415 patent or the undefined "significance" of extraction procedures in the '415 patent. These topics have nothing to do with "whether and how the Current Product is the same as/different from the defined Curcuma longa (Turmeric) product that had been sold by Prakruti before the execution of the Agreement." *Id.* Rather, the topics are a fishing expedition for out-of-context admissions concerning a patent filed 22 years ago—a patent that Prakruti stipulated was "valid, enforceable, and properly issued." ECF No. 34, ¶ 6 (Consent Judgment); *see also* ECF No. 39-2, Ex. A ¶ 5.1 (Settlement Agreement).

The '415 patent was filed as a provisional application on July 14, 1995, assigned to Sami Chemicals & Extracts, Ltd. The '415 patent was later licensed to Sabinsa in 2014, shortly before filing the present suit. Sabinsa, therefore, has little (if any) corporate knowledge about the "conception and development" or the "significance" of the '415 patent outside of what Dr. Majeed (a co-inventor) may know personally. Thus, to adequately prepare a witness for these topics will require a tremendous amount of effort to investigate facts from the early 1990s about the development of technologies disclosed in the '415 patent. Furthermore, the '415 patent says what it says. Sabinsa's corporate testimony about the '415 patent will not change the scope or meaning of the patent. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995) ("First, the testimony of Markman [the inventor] and his patent attorney on the proper construction of the claims is entitled to no deference."), *aff'd*, 517 U.S. 370 (1996).

Honorable Karen M. Williams, U.S.M.J.
November 29, 2017
Page 10

      Prakruti's own admissions concerning the meaning of Accused Products also undercut the propriety for discovery concerning the '415 patent. On August 17, 2017, Sabinsa received an official "Notice for Termination of the Settlement Agreement" from Prakruti's India counsel (the "Indian Legal Notice"). *See* Ex. 18.[9] In the Indian Legal Notice, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Prakruti cannot have it both ways by telling this Court one thing while at the same time using the opposite definition in its official Indian Legal Notice.

      For these reasons, the Court should grant a protective order barring discovery on Prakruti's Topic Nos. 6, 7, and 10, as well as personal deposition questions to Dr. Majeed concerning the '415 patent.

      We thank the Court for its consideration and continued assistance in this matter. We look forward to discussing these issues with Your Honor at the December 5, 2017 hearing.

                        Respectfully yours,

                        s/ Sean R. Kelly
                        Sean R. Kelly

SRK/kae
cc: Counsel for Defendant (by CM/ECF and/or electronic mail)
Enclosures

---

[9] Prakruti later admitted that it "instructed Sharath. G & Co., Advocates to send the Legal Notice to Sabinsa." Ex. 19, at 2 (Prakruti's Resp. to Req. for Admission No. 14).