## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SABINSA CORPORATION,<br><br>              Plaintiff,<br><br>      v.<br><br>HERBAKRAFT, INC. and<br>PRAKRUTI PRODUCTS PVT. LTD.,<br><br>              Defendants. | Civil Action No. 1:14-cv-04738-RBK/KMW<br><br>**Motion Day:  April 16, 2018**<br><br>(Document Filed Electronically)<br>(Filed Under Seal)<br>(Oral Argument Requested) |

---

## PLAINTIFF SABINSA CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION FOR SANCTIONS BASED UPON SPOLIATION

---

Sean R. Kelly (skelly@saiber.com)
Katherine A. Escanlar (kescanlar@saiber.com)
**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
Telephone: (973) 622-3333

James H. Hulme (james.hulme@arentfox.com)
Richard J. Berman (richard.berman@arentfox.com)
Taniel E. Anderson (taniel.anderson@arentfox.com)
Jake Christensen (jake.christensen@arentfox.com)
**ARENT FOX LLP**
1717 K Street, N.W.
Washington, DC 20006
Telephone: (202) 857-6000

*Attorneys for Plaintiff Sabinsa Corporation*

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 1

III.  LEGAL STANDARD ............................................................................................... 6

IV.  ARGUMENT .......................................................................................................... 8

    A.  Prakruti spoiled the three hidden samples. ............................................. 8

    B.  Prakruti should be sanctioned for suppressing the hidden samples. .................... 11

        1.  Spoliation inference and attorney's fees are proper here. ........................ 12

        2.  No sanction short of a spoliation inference will cure the prejudice caused by Prakruti's spoliation of evidence. ........................................... 14

V.  CONCLUSION ....................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Bendamustine Consol. Cases*,
 No. 13-cv-2046, ECF No. 214 (D. Del. Mar. 6, 2015) ...........................................................15

*Brewer v. Quaker State Oil Refining Corp.*,
 72 F.3d 326 (3d Cir. 1995)...................................................................................................12

*Bull v. United Parcel Serv., Inc.*,
 665 F.3d 68 (3d Cir. 2012).....................................................................................................7

*Deutschland GmbH v. Glenmark Pharm. Inc.*,
 No. 07-cv-5855, 2010 WL 2652412 (D.N.J. July 1, 2010), *aff'd*, 748 F.3d
 1354 (Fed. Cir. 2014).............................................................................................................6

*Fairview Ritz Corp. v. Borough of Fairview*,
 No. 09-cv-0875 (JLL), 2013 WL 163286 (D.N.J. Jan. 15, 2013)............................................7

*Klett v. Green*,
 No. 3:10-cv-02091, 2012 WL 2476368 (D.N.J. June 27, 2012).........................................9, 10

*Medeva Pharma Suisse A.G. v. Roxane Labs., Inc.*,
 No. 07-cv-5165 (FLW), 2011 WL 310697 (D.N.J. Jan. 28, 2011)................................ *passim*

*MOSAID Techs. Inc. v. Samsung Elecs. Co.*,
 348 F. Supp. 2d 332 (D.N.J. 2004) ............................................................................. *passim*

*Otsuka Pharm. Co. v. Intas Pharm. Ltd.*,
 No. 14-cv-3996-JBS-KMW, ECF No. 255 (D.N.J. June 30, 2017) .......................................15

*People v. Lynch*,
 35 P.3d 509 (Colo. 2000).....................................................................................................13

*Schmid v. Milwaukee Elec. Tools Corp.*,
 13 F.3d 76 (3d Cir. 1994) .....................................................................................................12

*Zubulake v. UBS Warburg LLC*,
 229 F.R.D. 422 (S.D.N.Y. 2004) ..........................................................................................13

**Other Authorities**

N.J. Rules Prof'l Conduct R. 1.3 ...............................................................................................13

N.J. Rules Prof'l Conduct R. 1.16(d)..........................................................................................13

## I.     INTRODUCTION

Defendant Prakruti Products Private Limited ("Prakruti") agreed to produce unexpired samples of the products at issue in this case. *See* Christensen Decl., Ex. 1 at 9–10. But Prakruti did the opposite and withheld at least three samples until ***after*** they expired. Adding insult to injury, Prakruti made false statements about its samples in every letter and court filing on this subject. Prakruti's actions are a clear case of unlawful spoliation of evidence, and Prakruti must be sanctioned. For the reasons discussed below, Sabinsa's Motion should be granted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Virtually everything that Prakruti has told Sabinsa and the Court about its samples is false. After months of misrepresentations, Prakruti finally came (partially) clean on January 19, 2018, when its counsel scheduled an emergency call to confess that he found three hidden samples[1] stashed with Prakruti's former counsel. *See* Christensen Decl., Ex. 2 at 1 ("To my great surprise, prior counsel indicated that he did in fact have samples, sitting in his office unopened."). Prakruti's counsel later admitted to the Court that Prakruti and its former counsel had the hidden samples since ***September 2016***. *See* Christensen Decl. ¶ 3. Prakruti's counsel claims that he "discovered" the hidden samples during a review of unspecified, unlogged privileged documents. *See* Christensen Decl., Ex. 2 at 1. Unfortunately, the hidden samples expired by December 2017, months after Sabinsa served its discovery requests, and can no longer be tested reliably. *See* Christensen Decl., Ex. 3 at 1, 3, 5.

But even this recent disclosure was not the whole truth. Given Prakruti's pattern of misrepresentations (discussed below), Sabinsa wrote to Prakruti on February 27, 2018 because "it appears to us that Prakruti may be withholding additional samples." Christensen Decl., Ex. 5

---

[1] The three samples come from batch numbers ████████████████████████████ ██████████. *See* Christensen Decl., Ex. 4.

at 1. Sabinsa was right. Four days later, Prakruti confessed that it "does have a sample for

PP/ORG/CUR/1607001" but "will not produce [it] to Sabinsa." Christensen Decl., Ex. 6 at 1.

Testing documents produced by a third party show that this sample is an Accused Product, as

defined by the Settlement Agreement. Sabinsa will address this additional hidden sample in the

upcoming joint letter submission to the Court.

**Misrepresentation # 1:** Three days after this case reopened on June 27, 2017, for

enforcement of the Settlement Agreement, Sabinsa promptly served on Prakruti a request for

production of samples. *See* Christensen Decl., Ex. 7.[2] To avoid delays and potential spoliation,

Sabinsa wrote to Prakruti a week later noting that "Sabinsa previously served a draft of the

discovery requests nearly seven months ago," and asking for "prompt responses" and production

"by the 30-day deadline." Christensen Decl., Ex. 8. Prakruti's counsel replied that because

"Prakruti is based in India," collecting responsive materials "will take some time," and

production will not "be complete within 30 days, nor do we believe that to be a reasonable

request." Christensen Decl., Ex. 9 at 2. This statement was at least partly false because Prakruti's

counsel already had the hidden samples sitting in his office in the United States for months.

There was no justification for delaying production of those samples.

In its formal discovery response, Prakruti promised to "produce any responsive, non-

expired samples in its possession, custody, or control." Christensen Decl., Ex. 1 at 9. But

Prakruti objected to producing expired samples because "out-of-date samples are not relevant

and need not be produced." *Id.* at 9. Three weeks later, Prakruti's former counsel filed a motion

to withdraw. ECF No. 86-1 at 2. Before the Court granted that motion, Prakruti's current counsel

---

[2] Notably, Sabinsa's December 12, 2016 reply in support of its motion to reopen the case to
enforce the Settlement Agreement enclosed an identical request for production of samples from
Prakruti. *See* ECF No. 58 at Request No. 6. Prakruti now admits that its former counsel had the
hidden samples months before receiving this request.

said that his "firm was very recently retained by Prakruti." Christensen Decl., Ex. 10 at 1. Thus, Prakruti was represented by its former counsel and current counsel until September 20, 2017, when the Court granted the motion to withdraw. *See* ECF No. 96.

Prakruti's change in counsel—its fourth in this litigation—was voluntary. It was also disruptive. Indeed, Prakruti's new counsel announced that he could not complete document and sample production by the agreed deadline of September 12, 2017, as promised by former counsel. *See* Christensen Decl., Ex. 11 at 3 (noting the original, agreed deadline). As a compromise, Sabinsa proposed an extension for document production, but specifically noted that the "extension . . . does not apply to samples. Sabinsa insists upon the immediate production of samples responsive to [Request] No. 6" because "sample expiration could be an issue." Christensen Decl., Ex. 12 at 3. Sabinsa served this letter on Prakruti's current *and* former counsel, who still represented Prakruti. Both of Prakruti's attorneys ignored this request while the hidden samples slowly expired.

**Misrepresentation # 2:** While still represented by two sets of attorneys, Prakruti identified five samples (one of which was already expired[3]) as "all samples . . . in its possession, custody, or control." Christensen Decl., Ex. 13 at 3–4. This interrogatory response was knowingly false because Prakruti's former counsel—who still represented Prakruti when the interrogatory response was served—had the hidden samples in his office since late 2016. The day after this response, the parties had a meet-and-confer call during which Sabinsa again

---

[3] The sample from batch number PP/ORG/CUR/1507001 expired on July 26, 2017. *See* ECF No. 113 at 4 (explaining how the expiration date was calculated). Prakruti dismissed this fact as a casualty of the Federal Rules' thirty-day period for discovery responses. *See* ECF No. 118 at 5 ("July 26, 2017 still predates Prakruti's deadline for producing samples . . . ."). Of course, the Federal Rules do not shield Prakruti's wrongdoing. It is completely improper to withhold a responsive sample until *after* it expires. *See generally MOSAID Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332 (D.N.J. 2004).

3

inquired about the sample production. *See* Christiansen Decl. ¶ 4. Eight days later on September

22, 2017, Prakruti finally produced the five samples. *See id.* ¶ 5.

**Misrepresentation # 3:** Suspicious about the tiny fraction of surviving samples, Sabinsa

wrote to Prakruti on October 27, 2017, asking "what happened to the missing samples."

Christensen Decl., Ex. 14 at 2. Prakruti's counsel replied, unequivocally, that "Prakruti is ***not***

***withholding any samples***, expired or otherwise." Christensen Decl., Ex. 15 at 1 (emphasis

added). This statement was false because Prakruti was withholding the three hidden samples at

its former counsel's office ***and*** another hidden sample (PP/ORG/CUR/1607001).

**Misrepresentation # 4:** About three weeks after serving its false interrogatory response,

Prakruti then verified that response as "true to the best of Prakruti's knowledge, information, and

belief after a reasonable inquiry" in a sworn statement. Christensen Decl., Ex. 16. This statement

from Dr. Shiv (Prakruti's corporate representative) was false because Prakruti still had not

identified the three hidden samples. Sabinsa believes that the privileged documents that

Prakruti's counsel cited as the source of his discovery of the missing samples are

communications between Dr. Shiv and Prakruti's former counsel.[4] The documents will likely

confirm that Dr. Shiv's sworn verification was willfully false because he knew that the hidden

samples existed. For this reason, Sabinsa respectfully submits that production or *in camera*

---

[4] Notably, Prakruti agreed to collect and review these documents months ago. *See* Christensen
Decl., Ex. 17 at 2 ("Prakruti agreed that no date restrictions for searches of Electronically Stored
Information ('ESI') are necessary . . . ."); Ex. 18 at 1 (responding with no objection regarding
cutoffs); Ex. 19 at 2 ("Prakruti is not currently imposing any date restrictions . . . ."); Ex. 20 at 4
("We remind Prakruti that it promised not to impose any date restrictions on its ESI searches or
paper document searches."). Prakruti reneged on these promises and imposed a date cutoff for its
ESI without informing Sabinsa. Months later, Sabinsa uncovered the secret cutoff date when it
received an email from third-party discovery that should have been collected and produced by
Prakruti. *See* Christensen Decl., Ex. 22 at 1–2. Caught red-handed, Prakruti admitted that
"Prakruti's production does not include emails dated after July 2016." Christensen Decl., Ex. 23
at 1. Only then did Prakruti's current counsel collect and review all of the ESI it had originally
promised to review, including the emails about the hidden samples.

review of these documents is needed.

**Misrepresentation # 5:** Prakruti's misrepresentations were not limited to statements made to Sabinsa. In a November 2017 letter to the Court, Prakruti stated: "Prakruti produced five separate 10-gram samples on September 22, which represents [sic] *every requested sample* in Prakruti's possession, custody, or control, manufactured prior to the '415 patent's expiration." ECF No. 107 at 4 (emphasis added). This statement was false because Prakruti was still withholding the three hidden samples.

**Misrepresentation # 6:** In a December 2017 letter to the Court, Prakruti repeated the same misrepresentation from its November 2017 filing. *See* ECF No. 118 at 4. This statement was also false because Prakruti was still withholding the three hidden samples.

**Misrepresentation # 7:** Finally, in response to an order from the Court (*see* ECF No. 121, ¶ 4), Prakruti submitted a sworn declaration from Dr. Shiv to prove that it had not retained any other responsive samples. *See* Christensen Decl., Ex. 21 at 2. This statement was false because Prakruti retained the three hidden samples in its prior counsel's office *and* another hidden sample (PP/ORG/CUR/1607001).

As shown above, it has been a Herculean task to extract samples from Prakruti. Of the nine samples that Prakruti eventually identified, four were withheld until after expiration and one is still being withheld. Clearly, Prakruti knew that samples were going to be important in this case. That is why Prakruti shipped the hidden samples to its prior counsel way back in late 2016 before the Court even reopened this case.

Prakruti also knew of the importance of testing samples before they expire. Indeed,

5

Prakruti adamantly refused to produce expired samples,[5] and persuaded the Court that expired samples are irrelevant.[6] But after admitting that it withheld samples until they expired, Prakruti reversed course and said that it did not know if expiration has any effect on the samples. *See* Christensen Decl., Ex. 24. Prakruti cannot have it both ways. It cannot argue that expired samples are irrelevant, and then take the opposite view to downplay the harm of withholding samples until after they expired.

Upon learning during the February 22, 2018 status hearing that Prakruti's prior counsel got the hidden samples in September 2016, the Court ordered formal briefing on spoliation. *See* ECF No. 136, ¶ 2. The issue is ripe for the Court's review.

## III.    LEGAL STANDARD

"Spoliation is . . . 'the failure to preserve property for another's use as evidence in pending . . . litigation.'" *MOSAID*, 348 F. Supp. 2d at 335 (citation omitted). To prevent spoliation, a litigant "'is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation.'" *Id.* at 336 (citation omitted). This obligation extends both to counsel and to client: "'Counsel must . . . monitor[] the party's efforts to retain and produce relevant documents.'" *sanofi-aventis Deutschland GmbH v. Glenmark Pharm. Inc.*, No. 07-cv-5855, 2010 WL 2652412, at *3 (D.N.J. July 1, 2010) (citation omitted), *aff'd*, 748 F.3d 1354 (Fed. Cir. 2014).

Spoliation requires a two-step inquiry. "The first question is whether spoliation occurred.

---

[5] Prakruti objected to Sabinsa's request for samples "to the extent that any samples are past their expiration or 'best buy' date as out-of-date samples are not relevant and need not be produced." Christensen Decl., Ex. 1 at 9.

[6] The parties presented their arguments on this issue during the October 5, 2017 telephone hearing, which was not transcribed. Yet, the Court's order memorialized its agreement with Prakruti that expired samples are irrelevant: "[T]his Court does not deem [expired samples] as discoverable as samples of expired product appear irrelevant . . . ." ECF No. 103, ¶ 2.

If it did, the second question is what sanctions are appropriate." *Fairview Ritz Corp. v. Borough*

*of Fairview*, No. 09-cv-0875 (JLL), 2013 WL 163286, at *4 (D.N.J. Jan. 15, 2013). Courts, by

their inherent authority and under the Federal Rules, have the power to impose a range of

sanctions on parties who spoil relevant evidence. *See MOSAID*, 348 F. Supp. 2d at 335.

"Potential sanctions for spoliation include: dismissal of a claim or granting judgment in favor of

a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation

inference; fines; and attorneys' fees and costs." *Id.* (footnotes omitted). "Dismissal or

suppression of evidence are the two most drastic sanctions . . . . As such, they should only be

imposed in the most extraordinary of circumstances . . . . A far lesser sanction is the spoliation

inference." *Id.* (citation omitted).

The spoliation inference "is an adverse inference that permits [the factfinder] to infer that

'destroyed evidence might or would have been unfavorable to the position of the offending

party.'" *Id.* at 336 (citation omitted). "This inference is predicated on the common sense

observation that when a party destroys evidence that is relevant to a claim or defense in a case,

the party did so out of the well-founded fear that the contents would harm him." *Id.* at 336

(citation omitted). Courts consider four factors before imposing a spoliation inference:

> First, "it is essential that the evidence in question be within the party's control."
> Second, "it must appear that there has been actual suppression or withholding of
> the evidence." Third, the evidence destroyed or withheld was relevant to claims or
> defenses. And fourth, it was reasonably foreseeable that the evidence would later
> be discoverable.

*Id.* (citations omitted); *see also Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012);

*Medeva Pharma Suisse A.G. v. Roxane Labs., Inc.*, No. 07-cv-5165 (FLW), 2011 WL 310697, at

*17–19 (D.N.J. Jan. 28, 2011).

For the reasons below, Sabinsa respectfully requests that the Court exercise its authority

to impose a spoliation inference against Prakruti and to award Sabinsa reasonable attorney's fees.

## IV.     ARGUMENT

### A.     Prakruti spoiled the three hidden samples.

The underlying facts surrounding Prakruti's suppression of the three hidden samples until after they expired easily satisfy the four-factor spoliation test.

First, Prakruti had control (and custody) of the hidden samples at all times. Indeed, Prakruti's counsel admitted to the Court that Prakruti collected and shipped the hidden samples to its former counsel in September 2016. The former counsel had the hidden "samples, sitting in his office unopened" for fifteen months (from September 2016 to January 2018), when Prakruti's current counsel "discovered" them. *See* Christensen Decl., Ex. 2 at 1. This factor is met.

Second, Prakruti withheld the hidden samples for months. The hidden samples should have been produced thirty days after Sabinsa served its production request. Instead, Prakruti (with its former and current counsel) withheld the hidden samples for seven months until they expired in January 2018. Prakruti knew that its former counsel had the hidden samples, yet repeatedly claimed that they did not exist. This factor is met. *See Medeva Pharma*, 2011 WL 310697, at *15 ("A party need not show that its adversary '*intentionally* or *knowingly* destroyed or withheld' evidence." (citation omitted)).

Third, the hidden samples are relevant to Sabinsa's claims and Prakruti's defenses. Specifically, Sabinsa needed the hidden samples before they expired for testing purposes to prove that Prakruti violated the terms of the Settlement Agreement. As an initial matter, Prakruti implicitly admitted that the hidden samples were relevant by shipping them to its counsel in September 2016—months before the litigation re-opened. *See* ECF No. 38 (motion to reopen).

Substantively, the hidden samples are relevant for testing to measure the curcuminoid content and the residual dissolved solvents present in the powder. The curcuminoid content can

be measured by HPLC (high-performance liquid chromatography) testing. This testing shows whether a given sample falls within the curcuminoid ranges claimed in Sabinsa's patent (the so-called "first prong" of the definition of Accused Products) or whether a given sample is substantially the same as Prakruti's pre-settlement Curcuma longa (turmeric) product (the so-called "second prong" of the definition of Accused Products). *See* ECF No. 75 at 4 (explaining the two prongs). Although Prakruti has produced in-house HPLC testing for some of its batches, Sabinsa has the right to independently verify the accuracy of Prakruti's tests. Furthermore, Prakruti has refused to produce raw data from its HPLC testing for verification. *See* Christensen Decl., Ex. 25 (requesting HPLC data); Ex. 26 (refusing to produce requested data). Sabinsa should not be forced to trust Prakruti's in-house tests, and should have had the opportunity to test the hidden samples before they expired. *See Klett v. Green*, No. 3:10-cv-02091, 2012 WL 2476368, at *12 (D.N.J. June 27, 2012) ("The UPS Defendants argue that, had they been able to inspect the vehicle, they might have uncovered additional forensic evidence. The Court agrees.").

The residual dissolved solvents test, as its name suggests, measures leftover solvents found in a sample. This is important to the defenses in this case because Prakruti argued that its alleged "change of extraction solvent (from ethyl acetate to ethyl alcohol)" somehow excused its product from the Settlement Agreement. ECF No. 75 at 3. Based on this, one would expect Prakruti's document production to include ample support for its change of extraction solvents. But Prakruti did not produce any residual dissolved solvents testing data. Curiously, ██████

████████████████████████████████████████████████████

████████████████████████████. *See, e.g.*, Christiansen Decl., Ex. 27 at

PRK0092481 (████████████████████████████████████████

███████████████████████). But *after* the Settlement Agreement,

Prakruti's ████████████████████████████████████. *See, e.g., id.* at

PRK0092341 (████████████████████████████). Thus,

Prakruti's own documents suggest a calculated effort to hide evidence. That suggestion is

reinforced by Prakruti's knowing obstruction of Sabinsa's entitlement to test the hidden samples

for residual dissolved solvents before expiration. *See Klett*, 2012 WL 2476368, at *12. The

relevance factor is clearly met.

Fourth and last, even before Sabinsa requested samples, Prakruti plainly recognized the

discoverability of the hidden samples—it shipped them to its counsel in the United States in

September 2016. Moreover, Prakruti knew that it had a duty to preserve the hidden samples

because of litigation-hold letters[7] and because of Sabinsa's discovery requests, which were filed

and served back in December 2016 and again in June 2017. *See* ECF No. 58 at Request No. 6

(asking for samples); Christensen Decl., Ex. 7 at Request No. 6 (same).

A similar spoliation occurred in *Medeva Pharma*. In that case, the plaintiff accused the

defendant of "impermissibly conceal[ing] the existence of a batch of its generic product."

*Medeva Pharma*, 2011 WL 310697, at *9. The plaintiff "sought discovery regarding all batches

of mesalamine tablets manufactured by [defendant], including samples thereof." *Id.* Although it

produced other samples, the defendant "did not provide any tablets from the Concealed Lot." *Id.*

And "despite [the plaintiff] having requested information regarding all samples," the defendant

did not "reference[] the Concealed Lot in its discovery responses." *Id.* For example, the plaintiff

served an interrogatory asking the defendant to identify "any" relevant samples, but "neither

---

[7] Anticipating sample-preservation issues, Sabinsa's counsel sent Prakruti's counsel a letter
identifying preservation concerns. *See* Christensen Decl., Ex. 28. ████████████████████
████████████████████████████████████████████████████████
Christiansen Decl., Ex. 21 at ¶¶ 9–10. Sabinsa believes that production or an *in camera* review of
Prakruti's ████████████████ is necessary.

[defendant]'s response nor supplemental response to this interrogatory . . . disclosed the existence of the Concealed Lot." *Id.* The defendant argued that the Concealed Lot was privileged and not discoverable. This Court ruled that withholding the Concealed Lot was spoliation. *See id.*

The facts here are nearly identical. Like the plaintiff in *Medeva Pharma*, Sabinsa sought discovery regarding all batches of Prakruti's curcumin products and specifically asked for samples and information about the samples. *See* Christensen Decl., Exs. 7, 29. Like the defendant in *Medeva Pharma*, Prakruti produced some samples, but withheld the hidden samples. And instead of disclosing the existence of the hidden samples, Prakruti's interrogatory response and supplemental response identified five other samples, without mentioning the hidden samples. *See* Christiansen Decl., Ex. 13. Unlike *Medeva Pharma*, Prakruti does not claim that the hidden samples are privileged—so there was no colorable excuse for withholding them.

As in *Medeva Pharma*, the Court should determine that Prakruti spoiled the hidden samples, and then determine the proper sanctions.

### B.      Prakruti should be sanctioned for suppressing the hidden samples.

"[T]he choice of which sanction should be imposed rests in the sound discretion of the Court." *Medeva Pharma*, 2011 WL 310697, at *14 (citation omitted). The more egregious the spoliation, the more severe the sanction.

"Dismissal or suppression of evidence are the two most drastic sanctions . . . . [and] should only be imposed in the most extraordinary of circumstances." *MOSAID*, 348 F. Supp. 2d at 335; *accord Medeva Pharma*, 2011 WL 310697, at *14. Before imposing such sanctions, courts evaluate three "key" factors:

> "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."

11

*MOSAID*, 348 F. Supp. 2d  at 335 (quoting *Schmid v. Milwaukee Elec. Tools Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)); *accord Medeva Pharma*, 2011 WL 310697, at \*14. In short, "where one of the more drastic sanctions such as dismissal or suppression of evidence is sought, a greater showing of culpability may be required." *Medeva Pharma*, 2011 WL 310697, at \*16 n.6 (citations omitted).[8]

By contrast, the imposition of lesser sanctions (including a spoliation inference and attorney's fees) does not require evaluation of the three factors above. Lesser sanctions merely require evidence of the four spoliation factors (analyzed above in § IV.A). *See MOSAID*, 348 F. Supp. 2d at 336 ("In order for the spoliation inference to apply, four essential factors must be satisfied."); *accord Medeva Pharma*, 2011 WL 310697, at \*14 (quoting *MOSAID*). Thus, for the less drastic sanctions of spoliation inference and attorney's fees, the two-step spoliation analysis ((1) was there spoliation and (2) what is the proper remedy) collapses into a single step:  If there was spoliation, then the spoliation inference and to reasonable attorney's fees are proper.

For the reasons below, the Court should sanction Prakruti with a spoliation inference and an award of attorney's fees in favor of Sabinsa.

### 1.     Spoliation inference and attorney's fees are proper here.

As explained above in § IV.A, Prakruti's actions satisfy the four factors for a finding of spoliation. Under the lesser standards for spoliation inference and attorney's fees, courts consider merely whether "there has been an actual suppression or withholding of the evidence." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995). Thus, "the offending party's culpability is largely irrelevant[,] as it cannot be denied that the opposing party has been prejudiced." *MOSAID*, 348 F. Supp. 2d at 338.

---

[8] Prakruti's repeated misrepresentations to Sabinsa and this Court provide ample evidence of culpability, and easily satisfy the three key factors for the most drastic sanctions.

Here, Prakruti knew that the three hidden samples existed and in fact shipped them to its counsel in September 2016. Despite this, Prakruti made repeated misrepresentations to Sabinsa and the Court that the hidden simples did not exist. Regardless of Prakruti's intent, there was actual withholding of the evidence until after the three hidden samples expired and became worthless. *See Medeva Pharma*, 2011 WL 310697, at \*15 ("A party need not show that its adversary '*intentionally* or *knowingly* destroyed or withheld' evidence." (citation omitted)).

Prakruti dismisses the spoliation as an innocent mistake. But even miscommunication between client and counsel would not excuse the spoliation of evidence. *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 436 (S.D.N.Y. 2004) ("This case represents a failure of communication, and that failure falls on counsel and client alike. At the end of the day, however, the duty to preserve and produce documents rests on the party. Once that duty is made clear to a party, either by court order or by instructions from counsel, that party is on notice of its obligations and acts at its own peril."). And under the Rules of Professional Conduct, "[a] lawyer shall act with reasonable diligence and promptness in representing a client." N.J. Rules Prof'l Conduct R. 1.3. "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect the client's interests, such as . . . surrendering papers and property to which the client is entitled." N.J. Rules Prof'l Conduct R. 1.16(d). Following these rules, Prakruti's former counsel should have informed the new counsel about the hidden samples and shipped them over. Similarly, Prakruti's current counsel, exercising reasonable diligence, should have asked the former counsel and his client if there were any more samples. None of this happened until it was too late. *See People v. Lynch*, 35 P.3d 509, 513 (Colo. 2000) (sanctioning counsel for "failure to return the requested documents or turn them over to successor counsel constituted a violation of Colo. RPC 1.16(d)," which mirrors the New Jersey rule).

13

The *Medeva Pharma* case is once again instructive in assessing the proper sanctions. This Court found that "sanctions [we]re warranted" in *Medeva Pharma* because samples were concealed. *See Medeva Pharma*, 2011 WL 310697, at \*17. Fortunately, the tardy disclosure in *Medeva Pharma* happened before expiration, and the plaintiff was still able to test reliable samples. Based on those facts, this Court ruled that awarding the plaintiff "reasonable expert fees and costs associated with its expedited testing of the Concealed Lot along with its reasonable attorneys' fees and costs incurred in briefing and arguing the portion of the instant motion related to [defendant]'s nondisclosure of the Concealed Lot are an appropriate sanction." *Id.* at \*19.

Here, Prakruti's conduct is more egregious, and the impact on the merits of the case is more fundamental and irreparable. Unlike the defendant in *Medeva Pharma*, Prakruti waited to produce the hidden samples until after they expired, making them worthless. Therefore, attorney's fees and costs alone are not appropriate here because the evidence is now lost forever.

Thus, there is ample support both for a spoliation inference and for attorney's fees.

> **2.    No sanction short of a spoliation inference will cure the prejudice caused by Prakruti's spoliation of evidence.**

When a party spoils evidence, "'it cannot be denied that the opposing party has been prejudiced.'" *Medeva Pharma*, 2011 WL 310697, at \*15 (citation omitted). Here, Prakruti's decision to withhold the hidden samples until after they expired made them worthless.

As explained above, Sabinsa intended to test Prakruti's samples for curcuminoid content (using HPLC) and for residual dissolved solvents. Now that the hidden samples are expired, however, the tests would not be reliable. Prakruti itself has consistently advocated this position. First, while responding to Sabinsa's request for samples, Prakruti agreed to "produce any responsive, ***non-expired samples*** in its possession, custody, or control." Christensen Decl., Ex. 1 at 9 (emphasis added). Prakruti specifically objected to producing expired samples because "out-

14

of-date samples are not relevant and need not be produced." *Id.* As support, Prakruti cited two recent decisions: *Otsuka Pharm. Co. v. Intas Pharm. Ltd.*, No. 14-cv-3996-JBS-KMW, ECF No. 255 (D.N.J. June 30, 2017) and *In re Bendamustine Consol. Cases*, No. 13-cv-2046, ECF No. 214 (D. Del. Mar. 6, 2015). *See* Christensen Decl., Ex. 1 at 9. In *Otsuka*, "the Court denied the motion [to compel] because defendants' samples were expired and thus neither representative of the actual ANDA product . . . nor relevant . . . ." *Otsuka* at 17 (citations omitted) (opinion enclosed as Christensen Decl., Ex. 29). Similarly, in *Bendamustine*, counsel explained that "it is well known that expired samples do have different efficacy, toxicity and impurity profiles, potency, safety, et cetera. And therefore, any testing done with respect to these samples is just simply irrelevant and does not go towards any claims or defenses set forth by plaintiffs." *Bendamustine* at 14:12–17 (transcript enclosed as Christensen Decl., Ex. 30). The court agreed and did not "see the relevance or the likelihood that the provision of [expired] samples is going to lead to the discovery of relevant evidence." *Id.* at 17:25–18:2. Consistent with this position, Prakruti then sought to limit third-party discovery because "any samples of old products . . . would be expired." ECF No. 101 at 1. This Court accepted Prakruti's argument: "With respect to the issue of discovery of expired product, this Court does not deem same as discoverable as samples of expired samples appear irrelevant . . . ." ECF No. 103, ¶ 2.

Based on Prakruti's own representations and the Court's acceptance of these positions, expired samples are irrelevant. Therefore, Prakruti's decision to withhold the hidden samples until after they expired spoiled them and rendered them worthless.

A spoliation inference is the most necessary and appropriate remedy here.

## V.    CONCLUSION

For these reasons, Sabinsa respectfully request that the Court grant its Motion for Sanctions Based Upon Spoliation against Prakruti, and draw the inference that batch numbers

███████████████████████████████████████ (the sources of the three expired

samples) consist of "Accused Products," as defined in the Settlement Agreement. Furthermore,

Sabinsa respectfully requests an award of its attorney's fees and costs associated with obtaining

samples and filing this motion. If the Court agrees, Sabinsa will provide the requested fee

amount.


Date:   March 23, 2018                                    Respectfully submitted,


OF COUNSEL:                                               /s/ Sean R. Kelly
James H. Hulme                                            Sean R. Kelly
Richard J. Berman                                         Katherine A. Escanlar
Taniel E. Anderson                                        **SAIBER LLC**
Jake Christensen                                          18 Columbia Turnpike
**ARENT FOX LLP**                                         Suite 200
1717 K Street, NW                                         Florham Park, NJ 07932
Washington, DC 20006                                      (973) 622-3333
(202) 857-6000                                            skelly@saiber.com
james.hulme@arentfox.com                                  kescanlar@saiber.com
richard.berman@arentfox.com
taniel.anderson@arentfox.com                              *Attorneys for Plaintiff Sabinsa Corporation*