THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SABINSA CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> HERBAKRAFT, INC. and <br> PRAKRUTI PRODUCTS PVT. LTD., <br><br> Defendants. | Civil No. 14-4738 (RBK/SAK) |

## OPINION AND ORDER

This matter comes before the Court upon United States District Judge Robert B. Kugler's November 22, 2021 Opinion [ECF No. 278] and Order [ECF No. 279] granting in part and denying in part Defendant Prakruti Products Pvt. Ltd.'s ("Prakruti") appeal of then Magistrate Judge Karen M. Williams' May 21, 2021 Order Awarding Attorneys' Fees [ECF No. 264] to Plaintiff Sabinsa Corporation ("Sabinsa") and remanding the matter as to the time entries of Sabinsa's out-of-town counsel, Arent Fox LLP ("Arent Fox").[1] The Court has reviewed Sabinsa's application [ECF No. 227] and Prakruti's response [ECF No. 230], as well as the parties' supplemental submissions [ECF Nos. 281, 282, 283, and 284].[2] The Court exercises its discretion to decide the issue without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1.  For the reasons discussed in detail herein, the Court finds that Arent Fox's times entries must be re-computed, and its fee calculation adjusted, accordingly.

---

[1] Sabinsa recently filed a "Notice of Firm Name Change" [ECF No. 285] indicating that Arent Fox "is now known as ArentFox Schiff LLP."

[2] As discussed herein, the Court invited the parties to supplement the record as to this sole issue. *See* ECF No. 280. Both parties opted to do so. *See* ECF Nos. 281, 282.  Both parties also sought leave to submit additional reply papers, as addressed, *infra*. *See* ECF Nos. 283, 284.

I.  **BACKGROUND**

Since the parties are well familiar with the factual and procedural background of the case, only the most salient points will be set forth herein.  Sabinsa initiated this action against Prakruti in 2014 asserting claims of patent infringement. *See* Compl. [ECF No. 1].  The parties ultimately settled all claims and entered into a settlement agreement to end Prakruti's alleged infringement of Sabinsa's patents.  Shortly thereafter, however, Sabinsa moved to reopen the action and enforce the settlement agreement, alleging that Prakruti was violating the terms of the agreement and again infringed its patents. *See* ECF No. 38.  The action was subsequently reopened in 2017. *See* ECF Nos. 75, 76.  What followed was years of contentious discovery by the parties to determine if, how, and to what extent Prakruti's conduct constituted infringement.  During the course of this discovery, Judge Williams determined that, *inter alia*, Prakruti had withheld certain information and spoliated certain evidence, warranting sanctions against it in the form of an adverse inference and an award of attorneys' fees and costs to Sabinsa. *See* ECF No. 220.  Subsequently, an Order was issued awarding Sabinsa attorneys' fees in the amount of $991,624.70 and costs in the amount of $13,035.23. *See* Order, May 21, 2021 [ECF No. 264].  Out of the $991,624.70 fee award, $879,724.20 was for services performed by Arent Fox.  Prakruti timely appealed the Order.

**A. Order Awarding Attorneys' Fees**

It bears noting at the outset precisely what is at issue on remand, or in other words, what issues were affirmed on appeal.  Sabinsa sought fees and costs in connection with its efforts to obtain discovery in the face of Prakruti's misconduct between October 2017 and January 2019. *See* Order, May 21, 2021 at 3–5.  Sabinsa initially sought $1,078,521.20 in attorneys' fees and $13,035.23 in costs. *Id.* at 5.  Prakruti objected on several grounds, including (1) that Sabinsa failed to establish its attorneys' rates were reasonable, (2) that a number of timekeeper entries were vague

or ambiguous, (3) that some of the work included in its request were not related to the sanctioned conduct, (4) that some entries represented inefficient or duplicative efforts, and (5) that some of the fees requested were for administrative tasks. *See* Prakruti's Resp. In the May 21, 2021 Order, Judge Williams held Sabinsa's requested billing rates were reasonable. However, she reduced the total hours claimed by 50.9 hours for vague time entries, 25.2 hours for challenged administrative tasks found to be more clerical in nature, and 53.2 hours for entries related to Court conferences which did not correspond with actual conference dates. *See* Order at 16–18 (vague entries), 18–19 (clerical work), and 27–28 (conferences). Judge Williams further held that the remaining entries related to administrative tasks were "appropriately performed by a paralegal," and that none of the claimed hours included time entries which were inefficient or duplicative. *Id.* at 19, 21. As such, 129.3 hours were reduced from the lodestar resulting in a final fee award of $991,624.70 and all requested costs. More specifically, Sabinsa was awarded attorneys' fees in the amount of $15,150 for its Indian-law counsel, $96,750.50 for Saiber, its local counsel, and $879,724.20 for Arent Fox, its lead patent counsel. Costs in the amount of $13,035.23 were also awarded.

### B. Opinion & Order Regarding Prakruti's Appeal

On appeal, Prakruti challenged Judge Williams' Order on three separate grounds.[3] *See id.* Two of the arguments were ultimately disposed of by Judge Kugler in an Opinion and Order dated November 22, 2021. *See* Op. [ECF No. 278]; Order [ECF No. 279]. As to Prakruti's remaining argument, however, Judge Kugler granted the request, in part, finding that the Magistrate Judge misapplied the current Third Circuit precedent of *Interfaith Community Organization v. Honeywell International, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005). *See* Op. at 9–11. Specifically, Judge Kugler found that, although the Order recognized "*Interfaith* governs the burden of the requester, *i.e.*,

---

[3] While the appeal was construed as asserting three distinct challenges, Prakruti essentially reraised its initial objections regarding reasonable rates and vague, unrelated, or duplicative time entries.

3

Sabinsa, to demonstrate the reasonableness of its requested fee, in the end the Order resolved reasonableness by focusing on Prakruti's burden to challenge [Sabinsa's] request with sufficient specificity." *Id.* at 9. Moreover, Judge Kugler found "the Order [was] silent as to *Interfaith*'s 'rule' that the forum rate is the reasonable one unless the requester sufficiently proves" at least one of two exceptions. *Id.* Judge Kugler also found that the Order was "silent as to whether Sabinsa was required to evidence *Interfaith*'s exceptions." *Id.* at 10. As such, Judge Kugler held that, lacking a *bona fide Interfaith* exception, the fee calculation computed at a non-forum rate for Sabinsa's Washington, D.C.-based counsel, Arent Fox, "was contrary to *Interfaith*." *Id.* at 11. Accordingly, Judge Kugler remanded the issue as to the time entries of Arent Fox for re-computation using the specific, relevant forum rate, unless "Sabinsa [could] properly demonstrate an *Interfaith* exception applies." *Id.* Thus, the sole issue on remand is whether Arent Fox's portion of Sabinsa's final fee award must be adjusted. As detailed below, the Court finds that the fee calculation for Arent Fox must be adjusted from $879,724.20 to $878,548.56.

Sabinsa's initial request of $965,019.20 in fees was based upon the following:[4]

| Timekeeper | Title | Hours | Rates | Claimed Fees |
|---|---|---|---|---|
| James H. Hulme, Esq. | Partner | 436.3 | $930.00 | $386,815.00 |
| Janine A. Carlan, Esq. | Partner | 0.3 | $760.00 | $228.00 |
| Taniel E. Anderson, Esq. | Partner | 502.4 | $650.00 | $298,685.00 |
| Jake Christensen, Esq. | Associate | 555.7 | $455.00 | $226,366.50 |
| Selby A. Cummings, Esq. | Associate | 2.0 | $385.00 | $770.00 |
| Rebecca W. Foreman, Esq. | Associate | 7.4 | $385.00 | $2,849.00 |
| | Paralegals[5] | 492.1 | | $130,760.00 |
| **Totals:** | | **1,996.2** | | **$1,046,473.50** |

---

[4] The Court compiled data submitted by Sabinsa in creating the following tables.
[5] The Court combines all of the time entries for Arent Fox's paralegals, since neither party briefed or challenged these rates on appeal or remand. While Prakruti challenged some of the time entries relating to paralegal work, it never directly challenged the paralegal's rates. The Court, therefore, will not consider any billing entries that where not "boxed," *i.e.*, actually challenged by Prakruti. *See Connor v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 09-1140, 2012 WL 6595072, at *6 n.9 (D.N.J. Dec. 18, 2012).

4

*See* Ex. 2 to Sabinsa's App. [ECF No. 227-2]. As may be apparent, however, the math does not add up. While Sabinsa claimed $965,019.20 in attorneys' fees for Arent Fox, its billing invoices and summary tables account for $1,046,473.50 in fees, as reflected in the table above. *See id.* at 1. After undertaking a thorough and searching review to resolve this discrepancy, it became evident that: (1) Arent Fox's billing rates were not fixed for the period in question—increasing marginally each calendar year; and (2) Arent Fox's monthly invoices include nine "Courtesy Discounts" over the sixteen-month period that are not otherwise reflected in the summary tables.[6] These discounts total $81,454.30,[7] and account for the discrepancy between the amount Sabinsa actually sought recovery for and the amount that the summary tables otherwise reflect. The method and manner in which Sabinsa compiled this information, however, does not make this readily apparent. Furthermore, while the May 21, 2021 Order acknowledged that Sabinsa sought "$965,019.20 in adjusted" fees for Arent Fox, it is not entirely clear whether this "adjustment" was in reference to the courtesy discounts or the variable billing rates, or both. Order at 4. As such, the Court finds the need to clarify the record upfront.

Beginning with the variable billing rates, the following table shows each attorney's rate for each year they worked on the case, their total hours, and their total billable fees:

| Timekeeper | Title | Hourly Rate | | | Hours | Total Billable |
| --- | --- | --- | --- | --- | --- | --- |
| | | 2017 | 2018 | 2019 | | |
| James H. Hulme, Esq. | Partner | $850 | $890 | $930 | 436.3 | $386,815.00 |
| Janine A. Carlan, Esq. | Partner | | $760 | | 0.3 | $228.00 |
| Taniel E. Anderson, Esq. | Partner | $550 | $600 | $650 | 502.4 | $298,685.00 |
| Jake Christensen, Esq. | Associate | $340 | $405 | $455 | 555.7 | $226,366.50 |
| Selby A. Cummings, Esq. | Associate | | | $385 | 2.0 | $770.00 |
| Rebecca W. Foreman, Esq. | Associate | $385 | | | 7.4 | $2,849.00 |

---

[6] *See* Ex. 2 to Sabinsa's App. at 2, 5, 8, 18, 20, 22, 24, 25, and 29.
[7] This equates to approximately a 7.78% discount off the total billable sum of $1,046,473.50.

When the courtesy discounts are applied, the following table shows the difference between what was billable and what was invoiced, and provides an adjusted billing rate for each entry based on the total hours worked and the total sum invoiced:

| Timekeeper | Title | Hours | Total Billable | Total Invoiced[8] | Adjusted Rate |
|---|---|---|---|---|---|
| James H. Hulme, Esq. | Partner | 436.3 | $386,815.00 | $356,706.50 | $817.57 |
| Janine A. Carlan, Esq. | Partner | 0.3 | $228.00 | $210.25 | $700.83 |
| Taniel E. Anderson, Esq. | Partner | 502.4 | $298,685.00 | $275,436.27 | $548.24 |
| Jake Christensen, Esq. | Associate | 555.7 | $226,366.50 | $208,746.82 | $375.65 |
| Selby A. Cummings, Esq. | Associate | 2.0 | $770.00 | $710.07 | $355.03 |
| Rebecca W. Foreman, Esq. | Associate | 7.4 | $2,849.00 | $2,627.24 | $355.03 |
|  | Paralegals | 492.1 | $130,760.00 | $120,582.04 | $245.04 |
| **Totals:** |  | **1,996.2** | **$1,046,473.50** | **$965,019.19** |  |

To reiterate, the above table represents Sabinsa's claimed fees for Arent Fox before any deductions by Judge Williams.

---

[8] As noted, *supra*, the total discount applied by Arent Fox equates to roughly 7.78% off the total billable sum. However, the Court applied the exact discount of 7.78369447482425% evenly to the total billable fees for each entry since any attempt to round this figure yields inaccurate results. To be clear, this fourteen-decimal figure is derived by dividing $1,046,473.50 (total billable fees) by $81,454.30 (total discount), and then multiplying by 100 to calculate the percentage. Thus, the "Total Invoiced" equates to 92.21630552517575% of the "Total Billable" for each respective row. Working backwards to calculate each attorney's adjusted billing rates—by dividing the hours into the total invoiced—yields rates that had to be rounded to the nearest hundredth. Because of this, there are minor discrepancies between the "Total Invoiced" amount and the actual amount derived by multiplying the total hours by the rounded rate, ranging from the fraction of a penny to, at most, a deviation of approximately two dollars. For example, the adjusted billing rate for Mr. Hulme was rounded down to $817.57 from approximately $817.57163. As a result, when Mr. Hulme's hours are multiplied by the rounded rate, the resulting sum is $365,705.79 instead of $365,706.50, as reflected in the table above. Since the total invoiced amounts were also rounded to the nearest hundredth, the sum of these rounded numbers leaves a single penny unaccounted for.

### C. Supplemental Submissions Regarding Arent Fox

In light of Judge Kugler's decision finding the record lacking as to whether Sabinsa was required to evidence an *Interfaith* exception, the Court invited the parties to submit supplemental papers as to this sole issue regarding Arent Fox's time entries. *See* ECF No. 280. Both parties opted to do so. *See* Sabinsa's Suppl. Br. [ECF No. 281]; Prakruti's Suppl. Resp. [ECF No. 282]. Sabinsa now argues no adjustment is necessary because (1) Arent Fox's billings rates align with the forum rate, or alternatively, because (2) Arent Fox possesses a special expertise in representing Sabinsa which is "unmatched in the Camden Vicinage." Suppl. Br. at 5, 2–6. The Court must summarily dispose of this first argument as Judge Kugler's Opinion indisputably held otherwise. This notwithstanding, Sabinsa argues that, at a minimum, its local counsel's billing rates "do not represent the floor for Arent Fox's rates." *Id.* at 6 (citing Op., Nov. 22, 2021 at 11 n.8).

Sabinsa submits the following with its supplemental submission: the Declaration of James H. Hulme, Esquire [ECF No. 281-1], a partner at Arent Fox and counsel for Sabinsa in this matter; the Declaration of William L. Mentlik, Esquire [ECF No. 281-2], a New Jersey patent attorney of the law firm of Lerner, David, Littenberg, Krumholz & Mentlik, LLP ("Lerner David"); and the Declaration of Sean R. Kelly, Esquire [ECF No. 281-3], local counsel for Sabinsa of the law firm of Saiber LLC. Notably, Mr. Mentlik's declaration is the only new rate-related evidence Sabinsa offers. However, this declaration for the most part seeks to establish that Arent Fox's billing rates are commensurate with the forum rate—an argument not at issue on remand, as noted, *supra*. Since the other declarations seek to establish this as well, only three paragraphs throughout the declarations can be construed as evidence in support of establishing an *Interfaith* exception. *See* Hulme Decl. ¶¶ 4, 5; *see also* Mentlik Decl. ¶ 12.

In response, Prakruti contends Sabinsa has failed to establish an exception to *Interfaith*'s forum-rate rule. *See* Suppl. Resp. at 3–7.  Prakruti also asserts that Sabinsa briefs only one of the two applicable exceptions and alleges that, as a result, it waived the ability to establish the other.[9] *See id.* at 3–4.  Prakruti asserts that the "prevailing rates in this forum are considerably lower than [the rates] proffered by Sabinsa, which are identical to Arent Fox's Washington, D.C. rates." *Id.* at 7.  Prakruti further asserts that, "despite the Court's clear request, Sabinsa has still not submitted any evidence of the prevailing rates in the proper forum," *i.e.*, in the Camden Vicinage. *Id.* at 8. Consequently, Prakruti argues Sabinsa fails to meet its burden and, therefore, the fee calculation for its out-of-town counsel should be recalculated using the billing rates proffered by its experts. *See id.* at 8–11.

Prakruti submits the following in support: the Declaration of Angela Foster, Ph.D., Esquire [ECF No. 282-1], a New Jersey patent attorney, with a copy of her attorney profile attached thereto as Exhibit A; and the Declaration of Jerome C. Studer, Esquire [ECF No. 282-3], the founder and director of Legal Fee Analytics, LLC, with a copy of his *curriculum vitae* attached as Exhibit A. Dr. Foster declares that she is an experienced litigator who has been handling patent and complex commercial litigation for 22 years, initially at large firms and presently in her own intellectual property law boutique practice. *See* Foster Decl. ¶¶ 5–11.  Dr. Foster further declares her law firm is "located in central New Jersey, and [that she] regularly represent[s] clients in cases pending in the District of New Jersey, including the Camden Vicinage." *Id.* ¶ 12.  Based upon her experience and a review of the factual and procedural record of the case at hand, Dr. Foster concludes that she would have charged a rate of $500 per hour. *See id.* ¶¶ 13–21.

---

[9] To be clear, Sabinsa does not dispute this.  While the parties' requests to submit additional papers are addressed *infra*; the Court notes Sabinsa did not dispute this contention in its proposed reply, nor could it have, having not first asserted it in its supplemental brief. *See generally Bayer AG v. Schein Pharm., Inc.* 129 F. Supp. 2d 705, 716 (D.N.J. 2001), *aff'd*, 301 F.3d 1306 (3d Cir. 2002).

8

Likewise, Mr. Studer asserts his business is "one of the nation's leading consulting firms," and that he is a practicing attorney who "routinely provide[s] expert and independent analysis on the reasonableness of attorneys' fees." Studer Decl. ¶ 3. Mr. Studer incorporates and references the "2020 Real Rate Report (Mid-Year Update)" published by Wolters Kluwer ELM Solutions ("Real Rate Report") throughout his declaration, which he asserts is a reliable metric for assessing prevailing market rates. *Id.* ¶ 8; *see id.* ¶¶ 9–15. Portions of the Real Rate Report that Mr. Studer relies on concern the hourly rates charged by attorneys experienced in patent litigation practicing in the Philadelphia-Camden-Wilmington region,[10] as well as the nation at large. *See id.* ¶¶ 11–15. Specifically, Mr. Studer relies on the following table "[t]o isolate hourly rate information for the District of New Jersey, Camden Vicinage, for attorneys experienced in patent litigation."

**Table 1. Regional Rates**

| 2020 Rates for Philadelphia-Camden-Wilmington Attorneys Experienced in Patent Litigation | | | | Trend Analysis | | |
|---|---|---|---|---|---|---|
| Role | First Quartile | Median | Third Quartile | 2020 Mean | 2019 Mean | 2018 Mean |
| Partner | $595 | $697 | $789 | $686 | $686 | $626 |
| Associate | $300 | $365 | $440 | $392 | $406 | $373 |

*Id.* ¶ 11. Since the above "data set encompasses hourly rates charged by attorneys in Philadelphia as well as attorneys in Camden," Mr. Studer posits "the median or first quartile rates [would be] more representative of the hourly rates charged by attorneys in Camden . . . , as the hourly rates charged by attorneys located in Philadelphia are typically higher." *Id.* ¶ 12. Mr. Studer proceeds to compare this data set "with a broader set of data for attorneys nationally who are experienced

---

[10] Mr. Studer declares that "[t]he Real Rate Report does not break out information specifically for Camden, . . . but does include information specific to the 'Philadelphia-Camden-Wilmington Core Based Statistical Area (CBSA), which includes Camden, New Jersey." *Id.* ¶ 11 n.3.

9

in patent litigation, in order to evaluate factors other than geographic location" affecting attorneys' hourly rates, such as firm size. *Id.* ¶ 13; *see id.* ¶¶ 14–15.

**Table 2. National Rates**

| Firm Size | Role | 2020 Rates for Attorneys (Nationally) Experienced in Patent Litigation | | | Trend Analysis | | |
|---|---|---|---|---|---|---|---|
| | | First Quartile | Median | Third Quartile | 2020 Mean | 2019 Mean | 2018 Mean |
| 50 or Fewer | Partner | $369 | $525 | $627 | $545 | $539 | $502 |
| | Associate | $303 | $365 | $485 | $386 | $381 | $351 |
| 51 – 200 | Partner | $445 | $560 | $721 | $596 | $588 | $630 |
| | Associate | $301 | $365 | $475 | $398 | $388 | $385 |
| 201 – 500 | Partner | $576 | $700 | $808 | $705 | $655 | $657 |
| | Associate | $329 | $384 | $548 | $436 | $424 | $423 |
| 501 – 1,000 | Partner | $700 | $928 | $1,045 | $898 | $904 | $864 |
| | Associate | $533 | $670 | $781 | $644 | $624 | $598 |

*Id.* ¶ 14. Without referencing or considering the actual firm size of Arent Fox, Mr. Studer declares "the first quartile and median rates from the [regional] data set [in Table 1]. . . are more reflective of hourly rates charged at firms of 200 or fewer attorneys." *Id.* ¶ 15. Mr. Studer proceeds to further declare "the first quartile rates would be the best evidence of the hourly rates charged by attorneys in matters that were not particularly complex (for patent litigation)." *Id.* Accordingly, Mr. Studer proposes the hourly rates in this case should range somewhere between $595 and $697 for partners, and between $300 and $365 for associates.

Based on Dr. Foster's and Mr. Studer's declarations, Prakruti argues the first quartile rates from the regional data set in Table 1 represent the "upper limit on the appropriate prevailing rates" in the forum. Suppl. Resp. at 11. Stated differently, Prakruti argues the rates in this case should be capped at no more than $595 for partners and $300 for associates. However, since Arent Fox's compensation relates to work it performed between 2017 and 2019, Prakruti further argues that "a modest decrease" in the rates is required. *Id.* As such, Prakruti submits the following proposed

hourly rates for partners in 2017, 2018, and 2019 should apply: $517, $543, and $569, respectively. *See id.* As for associates, Prakruti submits the following proposed hourly rates should apply in a similar fashion: $276, $284, and $292, respectively. *See id.*

In reply,[11] Sabinsa seeks to discredit Dr. Foster's declaration, alleging her proposed billing rate is "hypothetical" and inconsistent with her own advertised rates. *See* Suppl. Reply at 2–6 [ECF No. 283]. Responding to criticism of its own declarations, Sabinsa further alleges Prakruti fails to establish that Dr. Foster is a practitioner based in the Camden Vicinage capable of opining on the relevant forum rate for patent litigation, since her law firm is located within the northern border of the Trenton Vicinage. *See id.* at 3–4. With respect to Mr. Studer's declaration, Sabinsa argues his "cherry-picked" analysis of the Real Rate Report fails to establish that Arent Fox's billing rates are excessive. *See id.* at 6–10. Apart from excluding relevant data concerning the rates for partners and associates in the relevant market based on years of experience, Sabinsa also faults Mr. Studer for failing to provide any basis or support for, *inter alia*, his conclusion that "the first-quartile rates would be the best evidence of the hourly rates charged by attorneys [in Camden] in matters that were not particularly complex (for patent litigation)." *See id.* at 7 n.8 (citing Studer Decl. ¶ 15). Instead, Sabinsa argues the third-quartile rates are applicable here[12] and demonstrate its own rates

---

[11] As previously noted, Sabinsa sought leave to file a proposed reply despite the Court's Order not contemplating nor scheduling any further submissions. *See* Sabinsa's Suppl. Reply [ECF No. 283]. Prakruti objected but, in the alternative, also sought consideration of a proposed sur-reply if the request were to be granted. *See* Prakruti's Suppl. Sur-Reply [ECF No. 284]. The Court grants both requests, but only to the extent that the proposed submissions do not exceed the permissible scope of argument. *See Bayer AG v. Schein Pharm., Inc.* 129 F. Supp. 2d 705, 716 (D.N.J. 2001), *aff'd*, 301 F.3d 1306 (3d Cir. 2002) ("It is axiomatic that reply briefs should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted."). Therefore, the Court will not consider portions of the proposed submissions that raise new facts or evidence not contained or referenced in the initial or supplemental filings. The Court finds it necessary to note that both parties have been provided with ample opportunity to offer evidence and brief this particular issue, from Sabinsa's application through Prakruti's appeal, and now again on remand.
[12] Sabinsa incorporates another table from the Real Rate Report that is specific to Philadelphia and breaks down the hourly rates charged by partners and associates based on years of experience. *See*

11

"are in line with the relevant forum rate." *Id.* at 8 (representing hourly rates of $789 and $440 for partners and associates, respectively). On this note, Sabinsa seeks to relitigate whether *Interfaith*'s forum-rate rule even applies, while also arguing only one of the two exceptions must be met and conceding that it only asserts a single exception. *See id.* at 10–11. Lastly, Sabinsa claims "Prakruti declines to question the rates for [some of its attorneys], or indeed any [] Arent Fox professional included in" its fee application other than Mr. Hulme.[13] *Id.* at 9.

Prakruti responds, in large part, defending Sabinsa's attacks on its representations and the credibility of its declarants. *See* Suppl. Sur-Reply at 1–3. While Prakruti objects to Sabinsa's attempt to offer new evidence in its reply, specifically other data sets from the Real Rate Report not relied on by its expert, Prakruti concedes "[t]here is no significant difference" between the data sets. *Id.* at 3; *see id.* at 4 (emphasis omitted) (noting "both the 2020 first quartile and median rates from Sabinsa's charts are lower than the 2020 first quartile and median rates from Mr. Studer's table," as reflected in Table 1, *supra*). Thus, Prakruti contends the "similarities between the tables tend[] to support [its] conclusions, not detract from them." *Id.* Moreover, Prakruti objects to Sabinsa's reliance on the third quartile rates, regardless of the data set, alleging it does so without offering any "argument or evidence as to why [these] rates are reasonable in this case." *Id.* Finally, Prakruti asserts any contention that it declined to question the rates of some attorneys is simply incorrect, noting that it proposed rates for both partners and associates alike. *See id.* at 4 n.3.

---

Resp. at 7. However, since the table was not included in Sabinsa's initial supplement or Prakruti's response, the Court does not reproduce it or consider its contents for purposes of the instant matter. The Court notes, however, that the table offered by Sabinsa is far more general than the data sets relied on by Prakruti and Mr. Studer, as it is not restricted to any practice area, such as patent law.
[13] Sabinsa also claims Judge Williams "over-trimmed" Arent Fox's fee award by applying their 2019 rates for all deductions, regardless of the time of the entry or rate charged. *See id.* at 9 n.13.

## II.     DISCUSSION

### A.  Legal Standard on Remand

"[O]n remand, the analysis of an *Interfaith* exception is preliminary and requisite to any calculation of [a] reasonable fee." Op., Nov. 22, 2021 at 11; *see generally Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705–07 (3d Cir. 2005).  Therefore, the Court must begin by assessing whether Sabinsa has established one of the two exceptions to *Interfaith*'s forum-rate rule.  Namely, (1) when the need for special expertise of counsel from a distant district is shown, and (2) when local counsel are unwilling to handle the case. *See Interfaith*, 426 F.3d at 705.  Sabinsa only attempts to establish the first exception here.  Before the Court proceeds, however, there is one material item in dispute that must first be resolved—the meaning of "forum" as it pertains to the forum-rate rule and fee applications more generally.

### 1.  Relevant Legal Community is the Camden Vicinage

Throughout its decision in *Interfaith*, and specifically, its discussion of the forum-rate rule and exceptions to that rule, the Third Circuit interchangeably refers to the prevailing market or hourly rates of the relevant "vicinage," "district," "forum," or "community." *See* 426 F.3d at 699, 703–05.  Accordingly, Sabinsa attempts to argue the prevailing market rate applicable in this case is that of "the entire District of New Jersey." Suppl. Br. at 3 n.2.  The Court disagrees. *Interfaith* establishes upfront and in unambiguous terms that compensation should be "based on market rates in the vicinage of the litigation," unless an exception is shown. 426 F.3d at 699.  Stated differently, *Interfaith*'s forum-rate rule is more geographical than literal in its application. *See, e.g.*, *Americans for Prosperity v. Grewal*, No. 19-14228, 2021 WL 1153194, at *12–13 (D.N.J. Mar. 26, 2021) (concluding that, since the action was pending in the "Trenton Vicinage," the applicable market rate was that of the vicinage, or central New Jersey).  As such, the Court finds the prevailing market

rate applicable here is that of the Camden Vicinage, or southern New Jersey—unless an *Interfaith* exception applies.

### 2. Sabinsa Fails to Establish an *Interfaith* Exception Applies

In order to prove the "special expertise" of out-of-forum counsel is required, the prevailing party must submit "'sufficient evidence' to show it (1) 'searched for firms in [the forum] with the ability to handle this case,' and (2) 'was unable to find attorneys with [an out-of-forum counsel's] extensive experience with [similar] cases.'" *Id.* at *12 (alterations in original) (citation omitted) (finding the applicant failed to establish this exception applied because it "present[ed] no positive evidence that it actually searched for New Jersey law firms and could not find one with the required special expertise").

Here, Sabinsa submits no evidence to show it actually searched for law firms in the forum and could not find one with the required special expertise. Much like in *Grewal*, Sabinsa merely claims "the expertise and capabilities of Arent Fox . . . are unmatched in the Camden Vicinage, such that no other patent litigation counsel based in the Camden Vicinage possesses the special expertise or institutional capabilities necessary to effectively represent Sabinsa in this matter or to achieve the same successful result." Suppl. Br. at 5. However, the "fact that [a non-forum firm] was suited to such representation does not imply that firms from [the forum] were not." *Interfaith*, 426 F.3d at 705. More critically, the "record is devoid of any evidence that [Sabinsa] conducted" a search, let alone, "a significant search for counsel [in the forum] with the ability to handle this case." *Id.* The failure to submit any such evidence is Sabinsa's fatal flaw.[14] As a result, the Court finds Sabinsa fails to establish that an exception to the forum-rate rule applies.

---

[14] While Sabinsa repeatedly argues that it initially filed the case in the Trenton Vicinage and that it was subsequently reallocated to the Camden Vicinage, it offers no case law or other authority to support its contention that, because of this, the relevant forum is the entire District of New Jersey. *See* Suppl. Br. at 3 n.2; *see also* Suppl. Reply at 10–11 (arguing "Sabinsa cannot be expected to

### B. Analysis of the Reasonable Hourly Rate

"[A] reasonable hourly rate should be determined by examination of the prevailing market rates in the relevant community at the time of the fee petition, not the time the legal services were performed. A court should assess the skill and experience of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *L.J. ex rel. V.J. v. Audubon Bd. of Educ.*, 373 F. App'x 294, 296 (3d Cir. 2010) (citations omitted).

#### 1. Sabinsa Fails to Carry its Burden of Proving a Reasonable Rate

The applicant carries the initial burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered. *See id.* "This burden is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience." *S.D. v. Manville Bd. of Educ.*, 989 F. Supp. 649, 656 (D.N.J. 1998) (citation omitted). This burden cannot be met, however, if the only evidence submitted is the self-serving declaration of the applicant's own counsel. *See Grewal*, 2021 WL 1153194, at *12. If the applicant fails to sustain its burden, a court "must use its discretion to determine the market rate." *L.J.*, 373 F. App'x at 297 (citations omitted); *see Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) ("Having rejected the prevailing party's evidence of rates, the District Court was free to affix an adjusted rate."). Here, the Court finds that Sabinsa fails to meet its burden of establishing a reasonable market rate for a number of reasons.

---

change its counsel mid-way through a case because of reallocation"). Notably, the only case law Sabinsa references other than *Interfaith* in its supplemental filings are cases which Dr. Foster purportedly worked on. *See* Suppl. Reply at 2–3; *see also* Suppl. Br. at 3–4, 6.

15

First, the only affidavit or declaration from an attorney unaffiliated with Sabinsa's legal counsel is from William L. Mentlik, Esquire. However, Sabinsa submits Mr. Mentlik's declaration in an attempt to relitigate an issue already decided on appeal—which renders the declaration useless on remand. *See* Op., Nov. 22, 2021 at 4 (emphasis added) (finding "the Washington, D.C. rates of Arent Fox are *higher* than the local forum rate"). Furthermore, Mr. Mentlik argues his rates are commensurate with the rates of James H. Hulme, Esquire, a senior partner at Arent Fox. However, Mr. Mentlik's law firm, Lerner David, is not based in the Camden Vicinage, but rather, in Cranbury, New Jersey, within the Trenton Vicinage. *See* Mentlik Decl. ¶ 2. Regardless of how the parties characterize the location, Mr. Mentlik's firm is simply not located in the relevant forum. *See* Prakruti's Suppl. Resp. at 8 (arguing that it "is in the shadow of New York City"). Therefore, Mr. Mentlik's rates are not representative of the prevailing market rate in the forum.

Next, the only other declarations submitted by Sabinsa are from Mr. Hulme of Arent Fox, Sabinsa's non-forum counsel, and Sean R. Kelly, Esquire of Saiber, Sabinsa's local counsel. These declarations may be viewed as self-serving. To the extent these declarations leave "any doubt as to the amount of fees to be awarded, these doubts shall be resolved against an award of fees." *Veneziano v. Long Island Pipe Fab. & Supply Corp.*, 238 F. Supp. 2d 683, 695 (D.N.J. 2002). "This is because the party seeking to recover attorney's fees bears the burden of establishing its right to them." *Id.* (citing *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)). Counsel's fixation on the conduct underlying its entitlement to fees is entirely misguided. While Prakruti's spoliation of evidence and other discovery abuses established Sabinsa's right to recovery of fees, it has no bearing on whether an exception to the forum-rate rule applies, nor does it shift the burden to otherwise establish a reasonable market rate.

### 2. The Real Rate Report Provides the Standard

Prakruti proposes that the fee schedule in the 2020 Real Rate Report (Mid-Year Update) published by Wolters Kluwer ELM Solutions offers reasonable hourly rates charged by attorneys experienced in patent litigation in the Philadelphia-Camden-Wilmington area. *See* Suppl. Resp. at 10; *see also* Table 1, *supra*. Specifically, Prakruti proposes the first quartile 2020 rates represent "an upper limit on the appropriate prevailing rates" of the forum and requests a "modest decrease" to account for each year going backwards, since the work underlying the application took place between October 2017 and January 2019. Suppl. Resp. at 11. Thus, unlike with its initial objection, Prakruti now submits sufficient "evidence regarding the prevailing market rate" in the forum. Order, May 21, 2021 at 13. Sabinsa opposes the use of the fee schedule, insofar as it claims other fee schedules in the Real Rate Report show rates exceeding those found in the regional portion for patent litigation that Prakruti and Mr. Studer rely upon. *See* Suppl. Reply at 6–10.

Here, the Court adopts the Real Rate Report's regional fee schedule for patent litigation, as it is the only reliable evidence submitted by either party regarding the prevailing market rate.[15] The Court notes that neither party cites to any cases in this District in which the report was utilized or relied upon. However, at least one New Jersey district court has endorsed the use of a similar fee schedule from the 2015 Real Rate Report. *See Skeen v. BMW of N. Am., LLC*, 13-1531, 2016 WL 4033969, at *21–23 (D.N.J. July 26, 2016). Other courts have also more routinely relied upon the Real Rate Report in this context. *See, e.g.*, *Smith v. Ctny. of Riverside*, No. 16-227, 2019 WL 4187381 (C.D. Cal. June 17, 2019); *Acevedo v. City of Los Angeles*, No. 14-5661, 2016 WL

---

[15] The Court will not consider Dr. Foster's declaration, as she is not located within the forum and, therefore, is unable to opine as to the reasonable prevailing market rate in the forum. The Court will also not consider the additional data set Sabinsa references in its reply, because it was not included in either party's initial or supplemental filings. It bears noting, however, that this data set is far less specific than the data sets propounded by Prakruti, as it is not restricted to a particular practice of law and only accounts for the Philadelphia metropolitan area. *See* Suppl. Reply at 7.

11525321 (C.D. Cal. Dec. 2, 2016); *Eksouzian v. Albanese*, No. 13-728, 2015 WL 12765585, (C.D. Cal. Oct. 23, 2015). Therefore, the Court will adopt the regional fee schedule proposed by Prakruti but will deny its request to apply the first quartile rates. Instead, the Court will apply the third quartile rates of the 2020 fee schedule, shown as follows:

**Table 1. Regional Rates**

| 2020 Rates for Philadelphia-Camden-Wilmington Attorneys Experienced in Patent Litigation | | | | Trend Analysis | | |
|---|---|---|---|---|---|---|
| Role | First Quartile | Median | Third Quartile | 2020 Mean | 2019 Mean | 2018 Mean |
| Partner | $595 | $697 | $789 | $686 | $686 | $626 |
| Associate | $300 | $365 | $440 | $392 | $406 | $373 |

To start, Prakruti's request for a modest decrease is entirely misguided, regardless of the proposed fee schedule or quartile. As discussed, a reasonable hourly rate is determined by the prevailing market rate at the time of the application, not when the legal services were performed. *See L.J.*, 373 F. App'x at 296. Nevertheless, the Court finds the third quartile of the 2020 fee schedule is appropriate based on the complex and lengthy nature of the litigation, the misconduct underlying Sabinsa's right to recovery, and the successful result reached on its motion for sanctions. Although the application was filed on January 31, 2019, in light of complications caused by the COVID-19 pandemic, the Court was unable to convene the parties for oral argument until May 7, 2021. *See* ECF No. 267. Judge Williams' Order was issued two weeks later, on May 21, 2021. Furthermore, Prakruti only submits evidence with respect to the 2020 rates. While the fee schedule contains additional information regarding the "mean" rates charged in 2018 and 2019, the underlying data is otherwise obscured. Moreover, upon a review of the data, it appears that the mean rates did not change substantially between the years of 2019 and 2020. *See* Table 1 (indicating the mean partner rate did not change and that the mean associate rate decreased slightly). Based on the foregoing, the Court finds the instant matter warrants utilizing the third quartile of the 2020 fee schedule.

### 3. Adjusted Lodestar Calculation

"To fix the size of a prevailing party's fee award, a court must determine the appropriate billing rate for the party's attorneys as well as the number of hours those attorneys reasonably expended on the action." *Interfaith*, 426 F.3d at 703 n.5 (citation omitted). The product of the hourly rate and the number of hours spent is referred to as the lodestar. *See id.*; *see also McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009). Since there is no dispute here with respect to expenses or claimed hours, the Court must first establish the adjusted lodestar absent deductions. Moreover, since the adjusted rate for Mr. Hulme is the only rate to exceed the fee schedule's caps, only his billing rate will be reduced. The Court will not disturb the other attorneys' rates or fees. Due to the fractional nature of the discount applied, the adjusted billing rates—while representative of the actual rates charged—had to be rounded to the nearest hundredth and because of this, yield imprecise results when multiplied by the hours worked. *See supra* note 8. The Court, therefore, will rely on the total invoiced fees for the other Arent Fox attorneys. Accordingly, in exercising its discretion, the Court finds the following rates are reasonable:

| Timekeeper | Title | Hours | Adjusted Rates | Total Fees |
|---|---|---|---|---|
| James H. Hulme, Esq. | Partner | 436.3 | $789.00 | $344,240.70 |
| Janine A. Carlan, Esq. | Partner | 0.3 | $700.83 | $210.25 |
| Taniel E. Anderson, Esq. | Partner | 502.4 | $548.24 | $275,436.27 |
| Jake Christensen, Esq. | Associate | 555.7 | $375.65 | $208,746.82 |
| Selby A. Cummings, Esq. | Associate | 2.0 | $355.03 | $710.07 |
| Rebecca W. Foreman, Esq. | Associate | 7.4 | $355.03 | $2,627.24 |
|  | Paralegals | 492.1 | $245.04 | $120,582.04 |
| **Totals:** |  | **1,996.2** |  | **$952,553.39** |

### 4. Adjusted Deductions

Having established the reasonableness of the adjusted billing rates, the final step the Court must take is to apply the previously decided deductions to the rates and the recalculated fee award. In total, Judge Williams' May 21, 2021 Order reduced Arent Fox's claimed hours by 125.2 hours. *See* Order at 29. With the adjusted rates, these deductions amount to the following:

| Timekeeper | Deducted Time | Adjusted Rates | Deducted Fees |
|---|---|---|---|
| James H. Hulme, Esq. | 72.6[16] | $789.00 | $57,281.40 |
| Taniel E. Anderson, Esq. | 9.2 | $548.24 | $5,043.81 |
| Jake Christensen, Esq. | 8 | $375.65 | $3,005.20 |
| Paralegals | 35.4 | $245.04 | $8,674.42 |
| **Totals:** | **125.2** | | **$74,004.83** |

## III. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** this **20th** day of **April**, **2022**, that Plaintiff's request for attorneys' fees as to the time entries of Arent Fox is **GRANTED** in the amount of **$878,548.56**.

s/ Sharon A. King
SHARON A. KING
United States Magistrate Judge

cc: Hon. Robert B. Kugler, U.S.D.J.

---

[16] The Court notes the May 21, 2021 Order indicates that Mr. Hulme's hours were reduced by 72.9 hours, not 72.6. *See* Order at 29. However, this appears to be a typographical error. A review of the Order reveals only 72.6 hours were deducted. *See id.* at 17–18, 27–28. And, when the total deduction of $67,518.00 is divided by the applicable rate of $930, the result is 72.6 hours.