IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____ :
SABINSA CORPORATION, :
                              *Plaintiffs*, :
       v. :           **Civil Action No: 14-cv-04738 RBK-SAK**
                           :
**HERBAKRAFT, INC., and PRAKRUTI** :       **ORDER AND OPINION**
**PRODUCTS PVT. LTD.,** :
                       *Defendants*. :
                               :
_____ :

**KUGLER, United States District Judge**:

**ORDER**

        **THE COURT HAVING REVIEWED** defendant Prakruti's motion dated 4 May 2022 to appeal the Magistrate Judge's order of 20 April 2022 granting plaintiff  Sabinsa's request for attorneys' fees and all relevant submissions related to Prakruti's motion;

        **IT IS HEREBY ORDERED:**  Prakruti's motion (ECF Doc. 287-1) dated 4 May 2022 is **DENIED.**

**OPINION**

        Before the Court is defendant's ["Prakruti"] motion ["the motion"] (ECF Doc. 287-1) dated 4 May 2022 to appeal the Magistrate Judge's order ["the order"] of 20 April 2022 granting plaintiff's ["Sabinsa'"] request for attorneys' fees (ECF Doc. 287).  For the reasons set forth below,  and for good cause shown, and without oral argument as permitted by *Fed. R. Civ. Proc. 78,* the motion is hereby **DENIED.**

**1.0      BACKGROUND AND PROCEDURAL HISTORY**

        This Court assumes the parties' familiarity with the factual background and procedural history of this matter. Both parties have conducted business in supplying nutraceutical products containing curcuminoids. Sabinsa held U.S. Pat. No. 5,861,415 ("the '415 patent"), which claims processes of isolating and administering curcuminoid products and a single product by process claim for a curcuminoid product.  In March 2014, Sabinsa sued Prakruti for infringing the '415 patent.  On 7 January 2015 the parties executed a settlement agreement ("the Agreement") and terminated the infringement suit.  The Agreement defined Prakruti's own curcuminoid products as infringing under the '415 patent, affirmatively prohibited Prakruti's possible validity challenge of the '415 patent, and obligated Prakruti

to pay a royalty for any subsequent sales of Prakruti curcuminoid products. The '415 patent expired on or about 12 July 2016.

On 28 October 2016, Sabinsa, believing Prakruti had continued to sell curcuminoid products without paying the required royalty, sought to open infringement action to enforce the Agreement. (ECF Docs. 38 and 29). This Court granted Sabinsa's motion for the sole purpose of engaging in a limited discovery process to determine if Prakruti had breached the Agreement. This Court's Re-Opening Order (ECF Doc. 76) empowered Sabinsa to obtain samples of Prakruti's products for testing of infringement and other information about Prakruti's post-Agreement sales.

Eventually, Sabinsa sought an order (ECF Doc.141) from the Magistrate Judge declaring Prakruti's spoliation (including the destruction of the tell-tale Prakruti samples) and sought sanctions against Prakruti for all spoliation issues, which also include misrepresentations, withholding of evidence and, and an overall disregard for the Court's Re-Opening Order.   On 17 December 2018, in her Spoliation Order (ECF Doc. 220), the Magistrate Judge held Prakruti had spoliated samples of its sold products, thereby obfuscating its possible infringement, and granted Sabinsa the attorneys' fees and costs it had incurred in demonstrating the spoliation and bringing motions related to it.

On 31 December 2018, Prakruti filed a motion (ECF Doc. 221) seeking reconsideration of the spoliation order and specifically asked the Magistrate Judge to reverse her findings, to wit: Sabinsa's spoliation sanctions, attorneys' fees, and the assurance of an adverse inference to the jury.  On 2 August 2019, the Magistrate Judge denied the reconsideration motion (ECF Doc. 235).  Prakruti then appealed the Spoliation Order to this Court. (ECF Doc. 236).

This Court denied Prakruti's appeal in part and remanded to the Magistrate Judge  (ECF Nos. 278 and ECF No. 279) on the issue of attorney fees calculation for Sabinsa's patent counsel, Arent Fox LLP ("Arent Fox"), located in Washington, DC.   After entertaining further argument by the parties on the issue of recalculation of Sabinsa's attorney fees for the spoliation discovery, on 4 April 2022, the Magistrate Judge issued her re-calculation opinion and order  (ECF Doc. 286), which adjusted the calculation for Arent Fox's fees from $879,724.20 to $878,548.56, that is, reduced the fees by a total of $1,173.64.  On 4 May 2022, Prakruti timely filed this motion to appeal the fee recalculation. (ECF Doc. 287). The parties timely filed their opposition (ECF Doc. 291) and reply (ECF Doc. 292).

## 1.0    PARTIES' CONTENTIONS

### 2.1    Prakruti

1)      The Magistrate Judge erred in her determination of reasonable rates for Arent Fox's attorney fees because she wrongly used the attorney fee rates for the Philadelphia, Pennsylvania and

Wilmington, Delaware areas to calculate legal work done in the Camden, New Jersey and southern New Jersey area.

2)       In equating the third quartile attorney fee rates for Philadelphia and Wilmington to those for Camden, NJ,  the Magistrate Judge wrongfully considered the following:  Prakruti's spoliation misconduct, the complexity of the litigation, and prior sanctions on Prakruti, and thereby abused her discretion in calculating the Arent Fox's legal fees in her Opinion and Order (ECF Doc. 286).

3)        Had the Magistrate Judge not taken into account these punishing factors in 2, the Magistrate Judge would have properly reduced the lodestar[1] calculation by an amount commensurate with a proper consideration of the rate of the forum where the fees were incurred.

**2.2 Sabinsa**

1)       The Magistrate Judge properly selected an applicable forum rate from the Real Rate Report provided by Prakruti's own expert and properly applied third quartile rates.

2)       The Magistrate Judge properly calculated the lodestar amount.

**2.0 LEGAL STANDARD**

A United States Magistrate Judge may hear and issue a decision on a non-dispositive, pre-trial matter pending before the court. 28 U.S.C. § 636(b)(1)(A); *Cardona v. General Motors Corp.,* 942 F.Supp. 868, 970 (D.N.J. 1996); *see* Fed. R. Civ. P. 72(a). The district court may reverse a magistrate judge's decision only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). The appellant has the burden to show the magistrate judge's decision meets the standard for reversal. *Exxon Corp. v. Halcon Shipping Co.,* 156 F.R.D. 589, 591 (D.N.J. 1994).

A district court must apply the "clearly erroneous" standard to a magistrate judge's fact finding. *Lithuanian Commerce Corp. v. Sara Lee Hoisery*, 177 F.R.D. 205, 213 (D.N.J. 1997) (citing *Lo Bosco v. Kure Eng'g Ltd.,* 891 F.Supp. 1035, 1037 (D.N.J. 1995). A magistrate judge's fact finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948). Mere disagreement with the magistrate judge's fact finding is insufficient for reversal. *Haines v. Liggett Grp. Inc.,* 975 F.2d 81, 91 (3d Cir. 1992). Further, a district judge must not consider

---

[1] "The Court calculates the lodestar amount by multiplying the number of hours "reasonably worked" on a client's case by a "reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." [*In re] Ins. Brokerage [Antitrust Litigation]*, 579 F.3d[, 241] at 280 [3d Cir. 2009] (quoting [*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d [294] at 302[3d Cir. 2005]).  "To examine the lodestar factor properly, a Court should make explicit findings about how much time counsel reasonably devoted to a given matter, and what a reasonable hourly fee would be for such services." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 199-200 (3d Cir. 2000) (citations omitted)." *Skeen v. BMW of North America, LLC*, 2016 WL 4033969, at *19 (D.N.J.  D. 2016).

evidence not presented before the magistrate judge. *Andrews v. Goodyear Tire & Rubber Co.,* 191 F.R.D. 59, 68 (D.N.J. 2000).

However, when an appeal "seeks review of a matter within the purview of the magistrate judge, such as fact-finding in a discovery dispute, an even more deferential standard, the 'abuse of discretion' standard, must be applied." *Koninklijke Philips Elec. N.V. v. Hunt Control Sys., Inc.*, No. 11-3684, 2014 WL 5798109, at *2 (D.N.J. 7 Nov 2014) (citation omitted).

Because of the magistrate judge's full involvement with the facts and record of the case (*Depomed, Inc. v. Purdue Pharma L.P. et al.*, No. 13-571, 2016 WL 6089699, at *3 (D.N.J. 14 Oct 2016), their decisions are reversed only for abuse of discretion. *Halsey v. Pfeiffer*, No. 09-1138, 2010 WL 3735702, at *1 (D.N.J. 17 Sep 2010) (citation omitted); *see also C.G. v. Winslow Twp. Bd. of Educ.*, No. 13-6278, 2015 WL 3794578, at *2 (D.N.J. 17 Jun 2015)).

An abuse of discretion occurs when a "material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." *V. Mane Fils S.A., v. Int'l Flavors and Fragrances Inc.*, No. 06-2304, 2008 WL 4606313, at *3 (D.N.J. 16 Oct 2008).

## 3.0    DISCUSSION

The only issue on appeal here is whether the Magistrate Judge abused her discretion, as argued by Prakruti, by calculating Arent Fox's patent attorneys' fees (properly via the lodestar method) using the third quartile rates from the 2020 Real Rate Report ["RRR"]  for patent litigation work in the Philadelphia, PA-Camden, NJ-Wilmington, DE region. Simply, Prakruti argues the use of the RRR third quartile rates to re-calculate the Arent Fox patent litigation rates is an abuse of the Magistrate Judge's discretion.

Because of this Court's remand (ECF Doc. 278) to the Magistrate Judge as to whether Sabinsa had properly considered the Third Circuit's precedent in *Interfaith Community Organization v. Honeywell Intern., Inc.*, 399 F.3d 2485 (3rd Cir 2005) in calculating its original request for attorney fees,  the Magistrate Judge asked the parties to file supplemental papers.  The parties were to demonstrate if any *Interfaith* exceptions allowed the use of non-forum attorney rates and if not, what were reasonable market rates.  If Sabinsa failed to so demonstrate an *Interfaith* exception, then the fees for Arent Fox (calculated from Washington DC rates) would be re-calculated using the rate of the forum.

In its supplemental paper (ECF Doc. 281, Sabinsa Suppl Resp.), Sabinsa argued the original fee calculation (using DC rates for Arent Fox fees) had met both *Interfaith* exceptions.  First, Arent Fox's billing rates aligned with the "forum" rate.  Alternatively, even though Arent Fox's DC rates were higher than market rates in Camden, they were nonetheless justified because of Arent Fox's special patent

litigation and discovery expertise, unmatched in the Camden Vicinage.  As for Sabinsa's evidence of a reasonable market rate, it offered declarations of two patent attorneys who attested that the original fee calculation was based on reasonable market rates: one declaration was from the very same Arent Fox attorney whose fees Prakruti was disputing, and the other declaration was from a central New Jersey patent litigator.

In its supplemental reply, Prakruti argued Sabinsa had failed to demonstrate either of the two *Interfaith* exceptions, and therefore, the rates of the forum must apply to the Arent Fox fees.  Prakruti then asserted the original calculation of Sabinsa's requested attorney fees must be reduced because "prevailing rates in this forum are considerably lower than [those rates] proffered by Sabinsa." (ECF Doc.282, Prakruti Suppl. Resp. at 7).

The Magistrate Judge agreed with Prakruti that Sabinsa had failed to demonstrate an *Interfaith* exception to justify the original calculation of Arent Fox attorneys' fees.  Specifically, she found the declarations of Sabinsa's expert, the Arent Fox patent litigator, self-serving and therefore unavailing and that Sabinsa had not demonstrated that every law firm in the forum of the Camden Vicinage lacked the special expertise required for the protracted and complicated discovery of Prakruti's patent infringement and spoliation.

In their supplemental responses, each party had argued a different definition of "forum", which girded the parties' arguments as to whether the Magistrate Judge even needed to re-calculate the sanction attorney fees.  Prakruti argued the definition of "forum" was Camden, NJ; for Sabinsa, the forum was the entire District of New Jersey.

Moreover, expert reports accompanied each supplemental response, which opined on the parties' assertion of proper forum, and reasonable market rate.  As mentioned above, Sabinsa submitted a declaration from the leading patent attorney at Arent Fox in Washington, D.C., James Hulme, Esq. (ECF Doc. 281-1), whose very rates Prakruti disputed, as well as a declaration from William Mentlik, Esq. (ECF Doc 281-2), a patent litigation attorney practicing in central New Jersey with no connection to this matter.[2]  Prakruti's expert, Jerome C. Studer, Esq., relied upon the 2020 Real Rate Report published by Wolters Kluwer ELM Solutions ("Real Rate Report")[3] to opine on which fee rates were the most accurate for Camden NJ patent attorneys.[4]  Specifically, Mr. Studer asserted that, for

---

[2] Both of Sabinsa's experts declared, based on their own personal experience, that the Arent Fox attorney rates were the correct, prevailing rate for the forum and for the kind of work performed.

[3] The 2020 Real Rate Report is generally regarded as the legal industry's leading benchmark for law firm rates and staffing trends based on actual invoice data.  In particular, the Real Rate Report examines law firm rates over time and itemizes rates by location, experience, firm size, areas of expertise, industry, and timekeeper role (i.e., partner, associate, and paralegal) It also identifies variables that drive rates up or down. The 2020 report contains data through Dec. 2019, which means this report informs on attorney's rates for an appropriate time period when Sabinsa was incurring attorneys' fees for its discovery of Prakruti's spoliation conduct.

[4] The table below displays the 2020 Real Report Rates for the Philadelphia-Wilmington-Camden area.

Camden, NJ,  the first quartile or median rates (in the Real Rate Report) for the Philadelphia-Camden-Wilmington region were the more correct because, he asserted, reasonable market rates for Philadelphia patent attorneys are "typically higher" (ECF Doc. 282-3, hereinafter "Studer Decl.", at ¶ 12).  The only evidence he pointed to was that larger firms charge more.  The bridging argument there was that there are few large firms in Camden NJ.  Consequently, Prakruti urged the Magistrate Judge to use the first quartile or median rates in her re-calculation of Arent Fox attorney fees.[5]

Not surprisingly, the Magistrate Judge found Sabinsa's expert declarations unpersuasive.  She agreed with Prakruti expert that the Real Rate Report was a more objective tool from which to re-calculate patent attorney fees.  The Magistrate Judge documented that the RRR had greater weight in her decision-making by noting other courts had routinely relied upon it, or other similar fee schedules, to determine reasonable market rates. (ECF Doc. 286  [*citing Smith v. Cnty. of Riverside*, No. 16-227, 2019 WL 4187381 (C.D. Cal. June 17, 2019); *Acevedo v. City of Los Angeles*, No. 14-5661, 2016 WL 11525321 (C.D. Cal. Dec. 2, 2016); *Eksouzian v. Albanese*, No. 13-728, 2015 WL 12765585 (C.D. Cal. Oct. 23, 2015) ]).

In her opinion re-calculating Arent Fox's attorney fees (ECF Doc. 286, hereinafter "Re-Calculation Opinion"), the Magistrate Judge considered the parties' experts' evidence as to: reasonable market rates, the proper forum, and the legal efforts needed to demonstrate spoliation and sanctions.[6] In so considering these factors, the Magistrate Judge rejected Prakruti's request for a "modest decrease" in the rates of all Arent Fox lawyers.  In practical terms, she declined Prakruti's request to re-calculate the fees using the 2020 RRR first quartile or median rates. Instead, the Magistrate Judge held the forum was Camden NJ/ southern New Jersey and that the RRR's third quartile rates were appropriate for that forum.   She expressly noted her consideration of the following factors:

> " a reasonable hourly rate is determined by the prevailing market rate at the time of the application, not when the legal services were performed. *See L.J.[ex rel. V.J.v. Audubon Bd. of Educ.,* 373 F. App'x  [294] at 296 [3d Cir 2009].   Nevertheless, the Court finds the third quartile of the 2020 fee schedule is appropriate based on the complex and lengthy nature of the litigation, the misconduct underlying Sabinsa's right to recovery, and the

| 2020 Rates for Philadelphia-Camden-Wilmington Attorneys Experienced in Patent Litigation | | | | Trend Analysis | | |
|---|---|---|---|---|---|---|
| Role | First Quartile | Median | Third Quartile | 2020 Mean | 2019 Mean | 2018 Mean |
| Partner | $595 | $697 | $789 | $686 | $686 | $626 |
| Associate | $300 | $365 | $440 | $392 | $406 | $373 |

ECF Doc. 282-3, ¶11,

[5] And, since she did not do so, the motion argues the Magistrate Judge improperly calculated the lodestar amount by using the inaccurate third quartile rates.  ECF Doc. 287-1.

[6] It must be kept in mind that these fees had accrued over years of Sabinsa's counsel having to overcome the procedural difficulties in getting Prakruti's spoliation behavior revealed.

successful result reached on its motion for sanctions." (ECF Doc. 286, Re-Calculation Opinion: 18).

Besides these considerations, the Magistrate Judge independently confirmed the reasonableness of the re-calculated fees for the Arent Fox attorneys.  She diligently did the math necessary to compare whether each originally-calculated fee amount for each Arent Fox attorney had exceeded her re-calculated fees using the third quartile rates.  In doing this comparison, the Magistrate Judge found only the fee of James Hulme, Esq. to exceed the third quartile rate (*see* footnote 3 *supra*); and she then downward-adjusted this fee in her re-calculation amount.

The Magistrate Judge's justification for choosing third-quartile rates is found primarily in the above-cited passage in the Re-Calculation Opinion: 18, which is the sole source of any possible abuse of her discretion and also the sole basis by which Prakruti can justify filing this motion.

This is because Prakruti cannot aver an abuse of discretion from the Magistrate Judge's reliance on their own expert's tool for fee calculation, the RRR.  Nor can Prakruti aver an abuse of discretion is the Magistrate Judge's decision that Camden, NJ or Southern New Jersey is the proper forum, which aligns with Prakruti's arguments.  The sole reason, then, for Prakruti's bringing this motion can arise only from the Magistrate Judge's refusal to accept Mr. Studer's unsupported assertion that rates for patent attorney legal fees in Camden, NJ are lower than they are for Philadelphia, PA or for Wilmington, DE.

To reiterate, a Magistrate Judge's abuse of discretion can arise when they make a biased error in judgment by improperly considering evidence.  Prakuti implies the Magistrate Judge made an improper consideration when she asserted Prakruti's spoliation misconduct supports the higher fee rate.  Consequently, they assert such a consideration demonstrates a punishing animus, and therefore an abuse of discretion.  Even if there were no punishing animus, Prakruti still implies the Magistrate Judge's refusal to use median or first quartile rates for the Camden, NJ / southern NJ forum is itself an abuse of discretion.  Prakruti's assumption, and bridging argument, is that, since Camden, NJ legal rates are categorically lower, the  Magistrate Judge can only have abused her discretion by not recognizing that in her lodestar calculations.

This excuse for an appeal of an incredibly thorough, lodestar re-calculation of Arent Fox's fees would be laughable if the Court were not aware of the details of the convoluted, unnecessary, and tortured procedural history by which Sabinsa, and its patent litigation firm Arent Fox, had to extract information from Prakruti about its infringing sales that allegedly violated the Agreement.  To the point, Prakruti cannot simply imply, without a whole lot more, that the Magistrate Judge's recognition of the agonizingly slow and years-long discovery process by which Sabinsa, through its patent litigation firm Arent Fox, extracted sufficient demonstration of spoliation indicates a punishing animus.  All this Court has to do is leaf through the Magistrate Judge's recommendations and transcript hearings,

especially  ECF Doc Nos.155, 158 (Sealed), 212 (Sealed), and 220, to be persuaded that an objectively reasonable consideration of the complex, complicated discovery relating to the sanctions justifies the third quartile rates.  Bluntly, the Magistrate Judge's appreciation of the complexity of this discovery does not and cannot show a punishing animus because of how objectively complicated the discovery and this matter's procedural history was to uncover Prakruti's spoliation. The Magistrate Judge's appreciation of the complex procedural background in this matter points to a properly weighted consideration of why Arent Fox's patent litigation services were used and why the third quartile fees are justified.

As for Prakruti's argument that the mere use of third quartile rates is an abuse of discretion, this Court sees real-world evidence everyday that demonstrates the unitary nature of the Philadelphia-Camden-Wilmington RRR rates.   To wit, Camden / South Jersey lawyers cross the Delaware River bridges regularly to practice in the courts of the Eastern District of Pennsylvania and likewise, Philadelphia lawyers cross the same bridges regularly to appear in this Court.  Some of those lawyers could, if they chose, bike or hike across the Delaware River to a hearing in either Court. That the Camden, NJ / South Jersey forum is neither in a large city nor hosts a renowned Chancery Court supports no assumption that legal rates, particularly for specialized expertise in patent litigation discovery, must be lower in Camden than those charged for similar in Philadelphia or Wilmington.  In fact, the Magistrate Judge's use of the proposed RRR rates shows that she recognized Philadelphia-Camden-Wilmington is a unitary rate region, and that her naming Camden/ South Jersey as the proper forum is her acknowledgement that Camden is a subset of that region.

Prakruti expert's opinion that Camden legal rates are nonetheless lower than Philadelphia's is not supported by rate evidence and therefor appears to be *ipse dixit.*  That the Magistrate Judge did not use the market rates urged by Prakruti's expert is, without much more, no abuse of discretion.

To the point, the table in footnote 3 on its face equates the Philadelphia, PA and Wilmington, DE legal markets with that of Camden, NJ and informs on different market rate levels, which the Third Circuit has recognized as pertaining to, among other things, the complexity of the legal work. *See* footnote 1 herein and *especially*, *Skeen v. BMW of N. Am., LLC,* No. 2:13-CV-1531-WHW-CLW, 2016 WL 4033969 (D.N.J. July 26, 2016) [Judge Walls relying on a Real Rate Report, which included Philadelphia and New York rates, for his calculation of rates for a case in the Camden Vicinage].   *See also Bilazzo v. Portfolio Recovery Assocs.,* LLC, 876 F.Supp. 2d 452, 470 (D.N.J. 2012); *Spectrum Produce Distrib., Inc. v. Fresh Mktg., Inc.*, No. 11-cv-06368 (JBS/KMW), 2012 WL 2369367, at * 4-5 (D.N.J. June 20, 2012).

Ultimately, Prakruti asked the Magistrate Judge to rely in general on the RRR.  But then it asked the Magistrate Judge to heed only on its own expert when she identified the precise rate for fee re-calculation.  Simply, Prakruti cannot have its cake and eat it too: that is, Prakruti cannot expect the

Magistrate Judge to use their expert's tool and then subvert the objectivity of that tool to conform to Prakruti's unjustified bias.

Since there is no evidentiary justification by Prakruti why the Magistrate Judge should have carved out a fee rate exception for Camden NJ from the unitary fee region of the RRR, this Court holds there is no scintilla of abuse of discretion by the Magistrate Judge in her re-calculation of the Arent Fox fees for spoliation, etc. discovery and thanks the Magistrate Judge for her diligence.

**4.0    CONCLUSION**

For the reasons discussed above, Prakruti's motion (ECF Doc. 287-1) appealing the Magistrate Judge's Opinion and Order (ECF No. 286)  is **DENIED.**

Dated:  5 December 2022

/s Robert B. Kugler
Robert B. Kugler
United States District Judge