# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SABINSA CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HERBAKRAFT, INC. and<br>PRAKRUTI PRODUCTS PVT. LTD.,<br><br>　　　　　Defendants. | C.A. No. 1:14-cv-04738-RBK-SAK<br><br>**Motion Date**: July 17, 2023<br><br>(Document Filed Electronically) |

## PLAINTIFF SABINSA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT

OF COUNSEL:
James H. Hulme
Richard J. Berman
Taniel E. Anderson
Jasjit S. Vidwan
**ARENTFOX SCHIFF LLP**
1717 K Street, NW
Washington, DC 20006
(202) 857-6000
james.hulme@afslaw.com
richard.berman@afslaw.com
taniel.anderson@afslaw.com
jasjit.vidwan@afslaw.com

Sean R. Kelly
Katherine A. Escanlar
**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
(973) 622-3333
skelly@saiber.com
kescanlar@saiber.com

*Attorneys for Plaintiff Sabinsa Corporation*

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................1

    A. Sabinsa has standing to enforce the settlement agreement. .........................2

    B. Prakruti failed to meet its burden of showing compelling circumstances to set the settlement agreement aside. ..................................4

    C. The Sample Products are "Accused Products." ............................................7

        1. Sabinsa need not prove infringement of the '415 patent. .................7

        2. The settlement agreement does not implicate antitrust or patent misuse laws. ............................................................................10

        3. The liquidated damages are presumptively reasonable and Prakruti offers no evidence to contradict the reasonableness. ................................................................................12

III. CONCLUSION ....................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Comdyne I, Inc. v. Corbin*,
 908 F.2d 1142 (3d Cir. 1990) ..................................................................................1

*Gjerlov v. Schuyler Labs., Inc.*,
 131 F.3d 1016 (Fed. Cir. 1997) ..............................................................4, 7, 8, 13

*Illinois Tool Works Inc. v. Indep. Ink, Inc.*,
 547 U.S. 28 (2006) ................................................................................................11

*Knoepfler v. Guardian Life Ins. Co. of Am.*,
 487 F. App'x 756 (3d Cir. 2012) ............................................................................1

*Markoglu v. Experian Corp.*,
 No. 15-cv-07508, 2017 WL 5989389 (D.N.J. Nov. 8, 2017) ..................... 2, 5, 6, 9

*Moreno v. Tringali*,
 2017 WL 2779746 (D.N.J. June 27, 2017) ...........................................................12

*Rottlund Homes of New Jersey, Inc. v. Saul, Ewing, Remick & Saul, LLP*,
 243 F. Supp. 2d 145 (D. Del. 2003) ........................................................................2

*Travelers Indem. Co. v. Bailey*,
 557 U.S. 137 (2009) ................................................................................................2

*United States v. Topco Assoc., Inc.*,
 405 U.S. 596 (1972) ........................................................................................11, 12

*Versata Software, Inc. v. SAP Am., Inc.*,
 717 F.3d 1255 (Fed. Cir. 2013) .............................................................................11

**Other Authorities**

35 U.S.C. § 284 ............................................................................................................9, 13

Fed. R. Civ. P. 60 ...............................................................................................................1

**I.     INTRODUCTION**

The settlement agreement and final Consent Judgment extinguished all of Prakruti's defenses to the original patent infringement suit. Prakruti reaped the benefits of the zero-dollar settlement in exchange for promises that Prakruti did not keep. And when the case reopened, it was a breach of contract claim—not a patent infringement suit. Ignoring this, Prakruti seeks to avoid default judgment on its breach of contract based on patent infringement defenses. That ship sailed long ago. And Prakruti's non-patent defenses are equally unavailing. The Court should order default judgment against Prakruti.

**II.    ARGUMENT**

Ignoring its status as a defaulting party who was held in civil contempt, Prakruti submits an opposition challenging allegations and facts that have been established with the entry of default. The default means that Prakruti has admitted all of Sabinsa's well-pleaded allegations. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1146 (3d Cir. 1990) (noting that liability is established "as all well-pleaded allegations in a complaint, except those relating to the amount of damages, are admitted as true following a default"). Therefore, Prakruti cannot dispute that the parties entered into a valid agreement or cherry-pick which provisions survive.

Prakruti also cannot challenge or modify the final Consent Judgment entered in 2015. ECF No. 34. The time to contest that judgment expired years ago. *See* Fed. R. Civ. P. 60; *Knoepfler v. Guardian Life Ins. Co. of Am.*, 487 F. App'x 756, 757 (3d Cir.

1

2012) ("'[A]s a general rule, a party cannot appeal a [C]onsent [J]udgment.'" (citation omitted)). "'It is just as important that there should be a place to end as that there should be a place to begin litigation,' . . . and the need for finality forbids a court called upon to enforce a final order to 'tunnel back . . . for the purpose of reassessing prior jurisdiction de novo.'" *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 154 (2009).

In the eight years since the Consent Judgment, Prakruti has not alleged that the judgment should be voided for any reason until now, when it finds itself defending willful violation of both the settlement agreement and the Consent Judgment. Prakruti is bound by the agreed terms and the Consent Judgment. Accordingly, most of the arguments it makes are precluded and need not be considered by this Court.

**A.     Sabinsa has standing to enforce the settlement agreement.**

"Under New Jersey law, a settlement agreement between parties to a lawsuit is itself a contract that is **separate and independent** from the underlying dispute." *Markoglu v. Experian Corp.*, No. 15-cv-07508, 2017 WL 5989389, at *2 (D.N.J. Nov. 8, 2017), *report and recommendation adopted*, 2017 WL 5986966 (D.N.J. Nov. 30, 2017) (emphasis added). And it is well-settled law that parties to a contract have standing to enforce the terms of the agreement. *Rottlund Homes of New Jersey, Inc. v. Saul, Ewing, Remick & Saul, LLP*, 243 F. Supp. 2d 145, 153 (D. Del. 2003) ("[A] party to a contract has standing to enforce a contract and sue for breach of that contract.").

Sabinsa and Prakruti were parties to the settlement agreement, so Sabinsa has standing to enforce it here. *See* ECF No. 39-2, Ex. A at 1(settlement agreement).

Prakruti, however, disputes Sabinsa's standing in this action by questioning Sabinsa's standing in the original patent suit. Opp. at 5 (ECF No. 338). Prakruti spends over 10 pages arguing that Sabinsa is not the exclusive licensee of the asserted '415 patent because Sami Labs Ltd. (Sabinsa's parent) kept certain rights and therefore should have been a party to the patent suit and settlement agreement. *Id.* at 5–16.

As noted above, however, entry of default moots Prakruti's argument. But even beyond the allegations that are accepted as true by virtue of a default, Prakruti and its counsel have repeatedly admitted that Sabinsa is the exclusive licensee of the '415 patent. *E.g.*, ECF No. 34, ¶ 5 ("Sabinsa is the exclusive licensee of the '415 Patent"). In the Consent Judgment that terminated the original action, the parties also expressly noted the relationship between Sabinsa and Sami Labs Ltd., and the parties agreed that, for purposes of the Consent Judgment and its enforcement, "Sabinsa" included Sami Labs Ltd.:

> For purposes of this Consent Judgment, "Sabinsa" means Sabinsa Corporation, including **any and all of its corporate parents**, corporate predecessors, corporate successors, past or present . . . .

ECF No. 34 (Final Consent Judgment) at 2, n.1 (emphasis added). Thus, Prakruti's entire argument is a red herring.

Prakruti's standing argument is also rooted in defenses to the original patent suit that Prakruti waived when it signed the settlement agreement:

> 8.2   Upon the Effective Date and in consideration of the promises and covenants contained in this Agreement, and except for the rights and obligations arising under this Agreement and the Final Consent

3

>Judgment, **Prakruti will be deemed to have renounced, released, and discharged** Sabinsa from any and all . . . **defenses of any nature whatsoever related to the Action** . . . including those which were known or reasonably could have been known to Prakruti prior to the Execution Date.

ECF No. 39-2, Ex. A, ¶ 8.2 (emphases added). And once the settlement agreement was executed and the Consent Judgment entered by the Court, the original action terminated. The only viable claims that remain related to the settlement agreement. *Id.*, ¶ 6.2 ("The entry of the Final Consent Judgment by the Court will terminate the Action with respect to Prakruti only, subject to the Court's continuing jurisdiction to enforce and oversee the requirements contained in the Final Consent Judgment or to enforce any aspect of this Agreement.").

This suit is now a breach of contract dispute, not a patent dispute. *See Gjerlov v. Schuyler Labs., Inc.*, 131 F.3d 1016, 1020 (Fed. Cir. 1997) ("Even though affecting a patent infringement action, breach of the [settlement] Agreement . . . presents a question of contract interpretation because its grounds for decision are based on state contract law."). Sabinsa, as a party to the settlement agreement, has standing to enforce the agreement under New Jersey contract law. And this Court, through the Consent Judgment that Prakruti never challenged until now, retained jurisdiction over the enforcement of the settlement agreement.

### B. Prakruti failed to meet its burden of showing compelling circumstances to set the settlement agreement aside.

Prakruti seeks to unwind the entire case from the start to escape the

consequences of its violations of the settlement agreement. To this end, Prakruti throws everything at the case but the kitchen sink. Prakruti argues that the original patent suit was defective and the Court should not have entered a Consent Judgment, maintained jurisdiction, or reopened the case for violation of an agreement that Prakruti voluntarily entered. Opp. at 14–16. Prakruti effectively blames everyone but itself for signing the settlement agreement and then repeatedly breaching it.

Despite the noise, Prakruti offers no compelling circumstances that would warrant vacating the settlement agreement. *See Markoglu*, 2017 WL 5989389, at *3 ("It is well established that 'the party seeking to set aside the settlement agreement has the burden of proving . . . extraordinary circumstance[s] sufficient to vitiate the agreement.'"). This Court has noted that "when considering whether it is appropriate to vacate a settlement, the basic rule pertinent to the decision is whether the movant lacked the 'mental capacity to comprehend and understand' the settlement and therefore lacked 'the capacity to make a valid contract.'" *Id.*

Prakruti does not allege (nor could it) that "that the settlement was entered through fraudulent or coercive means or that [it] lacked the legal standing or capacity to enter into either" the settlement agreement or the subsequent Consent Judgment. *Id.* And by its own admission, Prakruti acknowledges that it **wanted** to settle. ECF No. 332 (Hr'g Tr.) at 12:7–13 (May 1, 2023) ("they wanted to settle the case"). To accomplish this, Prakruti agreed to the terms of the settlement agreement. As a sophisticated corporation with extensive resources, Prakruti should be held to account

5

for its violation of the settlement agreement. *See Markoglu*, 2017 WL 5989389, at *2 ("Courts will . . . 'strain to give effect to the terms of a settlement wherever possible.'").

Prakruti cannot relitigate the original patent suit. If Prakruti lacked competent counsel to negotiate the terms of the agreement, it should have hired new counsel:

> THE COURT: . . . . was there anything that prevented your client from hiring another law firm that you know of?
>
> MR. WILSON: Not that I know of.
>
> THE COURT: Okay. Well, I fail to see even a slight chance that your client would be able to successfully raise that kind of a defense to an application here. He's a sophisticated business person.

ECF No. 332 (Hr'g Tr.) at 13:2–10 (May 1, 2023).[1] And finally, if the Court should have rejected Sabinsa's motion to reopen the case because Sabinsa allegedly lacked standing, the settlement agreement violated antitrust and patent misuse law, or a worldwide agreement was unenforceable, Prakruti should have raised those arguments years ago. Instead, the only arguments that Prakruti offered against reopening were that Prakruti's current products were not Accused Products because they included new formulations (ECF No. 54 at 2–5) and that the liquidated damages clause is

---

[1] Prakruti complains that Mr. Miron (its counsel for Consent Judgment) had a limited role and was not involved with settlement. Opp. at 31–33. But even if Mr. Miron had a limited role, Prakruti was still represented by Fox Rothschild during settlement discussions as their motion to withdraw had not yet been granted and it had resources to hire another lawyer (indeed, it hired many sets).

unreasonable and unenforceable (*id.* at 6–7).[2]

Simply put, there is no compelling reason for the Court to allow Prakruti to escape its commitment to the terms of the settlement agreement.

### C. The Sample Products are "Accused Products."

Despite the Court finding that "an adverse inference is the appropriate sanction" for the four spoliated batches (ECF No. 220 at 35), Prakruti argues that the lack of exact wording of the adverse inference allows some flexibility on whether the spoliated batches are indeed Accused Products under the settlement agreement. Opp. at 18–19. Prakruti's argument rests on a mistaken legal theory that for Sabinsa to recover under breach of contract, Sabinsa must prove that the products infringed the claims of the '415 patent. *Id.* at 19–23.

#### 1. *Sabinsa need not prove infringement of the '415 patent.*

"Determining whether [defendant] breached the Agreement by failing to meet one of the requirements of the Agreement does not require a finding of infringement of the [underlying] patent." *Gjerlov*, 131 F.3d at 1023. To recover under the liquidated damage provision of the settlement agreement, Sabinsa need only prove that there were "Curcuma longa (Turmeric) product[s] offered for sale by Prakruti"—a requirement that Sabinsa has satisfied. ECF No. 39-2, Ex. A, ¶ 1.6.

---

[2] As discussed below, both arguments are legally and factually flawed.

7

The *Gjerlov* case is instructive. "Patentees sued Schuyler . . . for infringement of . . . 'the '396 patent'[]." *Gjerlov*, 131 F.3d at 1017. The asserted patent covered a product "used to treat calves that become dehydrated." *Id.* Subsequently, "the lawsuit was settled by the Agreement," and a consent decree "provided that the district court's jurisdiction based on the complaint of patent infringement continued in order to enforce the terms of the Agreement and the consent decree." *Id.* at 1018.

"Under the Agreement, Patentees by concession agreed, *inter alia*, to release Schuyler from liability for infringement of the '396 patent . . . . In return, Schuyler conceded, *inter alia*, that any new product it manufactured or sold would have an amount of electrolytes and glucose greater than or equal to 69.5% by weight." *Id.* at 1023. "The claims of the '396 patent, however, cover only a range of 40 to 60% electrolytes and glucose." *Id.* "In effect, the Agreement preclude[d] Schuyler from making oral rehydrants having a percentage of electrolytes and glucose at least 9.5% above the upper limit of the range claimed in the patent." *Id.* Thus, Schuyler could (and did) breach the settlement agreement without infringing the claims of the '396 patent. The court held that "breach of the Agreement was not based on infringement of the patent; hence, in this case, the issues of breach and infringement are not intertwined." *Id.* at 1024. As such, damages for breach of the settlement agreement should be determined under contract law, not patent law. *Id.* ("Therefore, rather than the higher of lost profits or a reasonable royalty for patent infringement under section

8

284, damages should have been determined under state law regarding damages for breach of contract.").

The same is true here. Sabinsa is not seeking relief under the damages provision of the patent statute, 35 U.S.C. § 284. Instead, Sabinsa's requested relief is governed by the liquidated damages provision of the settlement agreement. Prakruti's own records show that Prakruti manufactured and sold *Curcuma longa* products during the settlement period. *See* Exs. A–H. The Court's adverse inference reinforces that the *Curcuma longa* products are Accused Products under the settlement agreement. ECF No. 220 at 35. No more showing is required to recover damages under contract law for breach of the settlement agreement.

Prakruti's argument that Sabinsa must prove infringement of the '415 patent and that patent rights are territorially limited to United States (Opp. at 19–23) misunderstands that the breach of settlement agreement claim "is separate and independent from the underlying dispute." *Markoglu*, 2017 WL 5989389, at *2. Sabinsa needs to prove only that Prakruti breached the terms of the agreement, which barred Prakruti from selling any *Curcuma longa (Turmeric)* products to third parties for 18 months (the period from settlement to expiration of '415 patent). Sabinsa has satisfied that requirement.

### 2. The settlement agreement does not implicate antitrust or patent misuse laws.

Next, Prakruti argues that "[i]f the settlement agreement is not restricted to the United States, then it would have required Prakruti [to] exit the worldwide market." Opp. At 25. According to Prakruti, a worldwide restriction would be an "illegal horizontal restraint of trade." *Id.* at 28 (citing § 1 of the Sherman Act). Prakruti makes a series of errors with this argument.

First, the settlement agreement stipulated that Prakruti could continue to manufacture and sell the Accused Products, but for a limited period of 18 months, Prakruti had to sell the Accused Products to Sabinsa. ECF No 39-2, Ex. A, ¶ 2.1 ("sell its Accused Product exclusively to Sabinsa until the '415 Patent expires"). Nothing required Prakruti to exit the worldwide market. Nor did the settlement agreement impose any price restrictions. Indeed, Prakruti could have continued selling its Accused Products to Sabinsa at the same prices offered to third-party purchasers and Prakruti does not suggest otherwise.[3] After the 18-month period, Prakruti could sell the Accused Products to anyone. But rather than abide by these terms, Prakruti willfully violated the settlement agreement immediately after executing it.[4]

Second, to reach the issue of antitrust or patent misuse, a movant must offer evidence (1) defining the relevant market and (2) showing that the patentee possessed

---

[3] Prakruti admits that the deal involved selling to Sabinsa. *See* Opp., Ex. 9 at 2 (j)–(k).

[4] Prakruti did not offer to sell any Accused Products to Sabinsa (or Sami Labs Ltd.) during the entire settlement period.

market power within the relevant market. *Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006). Here, Prakruti does not even bother to define what it considers the "relevant market." Is the "relevant market" the supplement industry as a whole? Or is it an herbal supplement industry? Or is it limited to curcumin products? Prakruti makes no effort to identify what it considers the relevant market. Nor does Prakruti provide any evidence of what Sabinsa's market share is within the unidentified market or how many competitors occupy it. Prakruti also offers no evidence that Sabinsa has restricted all other suppliers of curcumin in the undefined market.

Unburdened by the need to provide evidence, Prakruti broadly concludes that "Sabinsa had market power as evidenced by the circumstances of its lost profits claim against the third party discussed above and engaged in substantial interstate commerce." Opp. at 30. But lost profit damages are available to all patentees under the patent statute. *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1263–64 (Fed. Cir. 2013) ("Lost-profits damages are appropriate whenever there is a 'reasonable probability that, 'but for' the infringement, the patentee would have made the sales that were made by the infringer.'"). Yet patent rights do not confer market power. *See Illinois*, 547 U.S. at 45 ("Congress, the antitrust enforcement agencies, and most economists have all reached the conclusion that a patent does not necessarily confer market power upon the patentee."). Prakruti has made no showing otherwise.

Prakruti's attempt to tie the facts here to *United States v. Topco Assoc., Inc.* misses the mark. Opp. at 28–30. *Topco* involved "a cooperative association of about 25 small

11

and medium-sized independent regional supermarket chains that operate stores in some 33 States" with combined retail sales exceeded by only three national grocery chains. 405 U.S. 596, 598 (1972). Each member agreed to divide exclusive territory and not expand into another member's territory, thus barring competition. *Id.* The facts here do not even come close to *Topco*. The settlement agreement ended a patent infringement suit between competitors over one product. The parties agreed to resolve the dispute by agreeing to certain terms for a limited period. There is no illegal horizontal restraint of trade and the Court should reject Prakruti's flawed legal theory.

### 3. The liquidated damages are presumptively reasonable and Prakruti offers no evidence to contradict the reasonableness.

Liquidated damages provisions are presumptively reasonable and the challenger bears the burden of proving its unreasonableness. *Moreno v. Tringali*, 2017 WL 2779746, at *10–11 (D.N.J. June 27, 2017). Prakruti does not dispute that it is a sophisticated party or that it voluntarily agreed to the stipulated damage clause. Opp. at 36 ("Prakruti does not deny that it agreed to the stipulated damages clause"). Instead, Prakruti argues that its sophistication and voluntary agreement to the term should not be held against finding the clause unreasonable. *Id.* at 36–37.

This issue was already raised and rejected by the Court: "I fail to see even a slight chance that your client would be able to successfully raise that kind of a defense to an application here." ECF No. 332 (Hr'g Tr.) at 13:7–10 (May 1, 2023). Prakruti's position fails because it views the reasonableness of the damages from the prism of

12

patent royalties that Sabinsa would receive for each infringement act if this was still a patent dispute. Opp. at 31 ("The liquidated damages 'penalty' was not tied to a reasonable royalty for each infringement of the '415 Patent . . . ."). But as discussed above, a breach of the settlement agreement is not necessarily intertwined with infringement of the underlying patent. As such, the reasonableness of the damages for a breach of contract cannot be rooted in lost profits or a reasonable royalty that would have been available under section 284 of the patent statute. *Gjerlov*, 131 F.3d at 1024.

    Sabinsa also gave up past royalty and lost profit damages (plus enhancements and attorney's fees) in the patent dispute in exchange for the market opportunity that the agreement offered: new customers in new markets that may stay with Sabinsa after the expiration of the agreement. That bargained-for market opportunity was far more valuable than pursuing the patent case against Prakruti. The liquidated damages provision attempted to capture the value of lost opportunities, to build new relationships, and expand Sabinsa's customer base, along with the value of the abandoned patent case. Prakruti's attempt to renegotiate the liquidated damages as a proxy for reasonable royalties or lost profits on each infringement act is a litigation-driven rewriting of the settlement agreement. When it signed the settlement agreement, Prakruti understood—and even confirmed to Mr. Miron—that the $10,000/kg liquidated damages provision applied "even if the actual damage to Sabinsa is substantially less." Opp., Ex. 9 at 2 (m). Despite this acknowledgement,

13

Prakruti makes that exact argument here. Prakruti cannot reverse course after breaching the settlement agreement, spoliating evidence, refusing to pay sanctions, being held in civil contempt, and defaulting.

Prakruti knew that denying Sabinsa the opportunity to gain new customers and market share was far more valuable than a penalty for simple patent infringement.[5] The Court should not allow Prakruti to escape consequences of past patent damages by agreeing to the settlement agreement and then breaching that agreement by depriving Sabinsa of the bargained-for market share. The liquidated damages provision is reasonable considering the opportunity that the agreement offered.

## III.   CONCLUSION

For all the foregoing reasons, the Court should grant Sabinsa's request for default judgment in the amount of $15,040,000.

---

[5] Otherwise, Prakruti would have sold Accused Products to Sabinsa, as promised.

Dated: July 10, 2023

| | |
|---|---|
| Of Counsel:<br>James H. Hulme<br>Richard J. Berman<br>Taniel E. Anderson<br>Jasjit S. Vidwan<br>ARENT FOX LLP<br>1717 K Street, NW<br>Washington, DC 20006<br>Telephone: (202) 857-6000<br>Facsimile: (202) 857-6395<br>james.hulme@afslaw.com<br>richard.berman@afslaw.com<br>taniel.anderson@afslaw.com<br>jasjit.vidwan@afslaw.com | <u>/s/ Sean R. Kelly</u><br>Sean R. Kelly<br>Katherine A. Escanlar<br>SAIBER LLC<br>18 Columbia Turnpike<br>Suite 200<br>Florham Park, NJ 07932<br>Telephone: (973) 622-3333<br>skelly@saiber.com<br>kescanlar@saiber.com<br><br>*Attorneys for Plaintiff Sabinsa Corp.* |