IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____:
Sabinsa Corporation,                   :
                        Plaintiff,     :
                                       :        Civil Action No: 14-cv-04738 RBK-SAK
               v.                      :
                                       :        **Memorandum Opinion and Order**
                                       :
Prakruti Products Pvt. Ltd.,           :
                        Defendants.    :
_____:

**KUGLER, United States District Judge**:

    Having granted plaintiff's ["Sabinsa"] motion for default judgment (Doc. No. 352) against defendant ["Prakruti"] for Prakruti's breach of the parties' Settlement Agreement ["SA"] (Doc. 39-2, Sealed), the Court invited Sabinsa to show the reasonableness of the liquidated $15,042,800, in liquidated damages for approximately 4200 kilograms of evidenced curcuminoid product Prakruti sold in breach of the SA. This liquidated damages amount works out to a cost of $3,581.62 per kilo of breaching product, which had an average sales price of $98.00 per kilo. Thus, dividing $15,042,800 by 4200 kilograms equals a liquidated damages price of least 36 times greater than the actual sales price, a factor of damages enhancement that is unreasonable on its face.

    For the reasons discussed herein and good cause shown, and without oral argument pursuant to *Loc.R. 78.1*,

**IT IS HEREBY ORDERED:**  the Court **DENIES** Sabina's requested liquidated damages amount of $15,042,800 as unreasonable under New Jersey law;

**IT IS FURTHER ORDERED:**  a reasonable liquidated damages amount that Prakruti owes Sabinsa for breach of the parties' Settlement Agreement is $2,984,173.28; and

 **IT IS FURTHER ORDERED:**  the pending issues in this action having been fully resolved, the Clerk of the Court is directed to close this matter.


**MEMORANDUM OPINION**

**1.0  Overview**

    The only issues remaining in this breach of contract action is whether the liquidated damages clause in the Settlement Agreement between Sabinsa and Prakruti—specifically whether Sabinsa's request for liquidated damages of $15,042,800—is reasonable under New Jersey law.   Writing this

opinion only for the parties, the Court waives a detailed recitation of procedure and history in this eight year-long dispute, which began in 2014 when Sabinsa sued Prakruti for infringement of a patent, U.S. 5,861,415 [" the '415 patent"],[1] of which Sabinsa was an exclusive licensee.  Sabinsa's license (Doc. No. 388-3, Sealed) lasted from 17 Jul 2014 to the '415 patent expiry on 14 July 2016, that is, two years.

On 07 Jan 2015, the parties executed a Settlement Agreement ["SA", Doc. 39-2, Sealed), which:
-terminated the patent litigation via a Final Consent Judgment (Doc. No. 34)  issued by this Court;
-released Prakruti of having to pay money damages for its infringement of the '415 patent;
- assured that Prakruti would not be sued again for infringement of that patent;
- prohibited Prakruti from selling the "Accused Products" to any party located worldwide other than Sabinsa during the SA period (7 January 2015 to 14 July 2016) OR be liable for liquidated damages in the amount of $10,000 per kilogram.[2]

Through a long, drawn-out discovery process, this Court confirmed, via an adverse inference against Prakruti,  that Prakruti had breached the SA; it sold Accused Products to third parties during the SA period.  On 06 Nov 2023, this Court entered Default Judgment (Doc. No. 352) in favor of Sabinsa for Prakruti's breach and ordered Prakruti to pay liquidated damages.

The adverse inference showed that damages for the SA breach amounted to $150,428, which was an estimate of how much Accused Product Prakruti had sold in breach of the SA.  Under the liquidated damages clause, Sabinsa  sought $15,042,800 ($10,000 per breaching kilogram), a difference of  $14,885,720 from the actual sales amount.  In its Default Judgement Opinion, the Court invited the parties:

> "to brief and evidence specifically how the SA liquidated damages clause satisfies the fourth factor of the *Wasserman* test[3] (actual damages sustained by Sabinsa for Prakruti's breach of the SA).   In particular, the parties must show how the requested liquidated damages amount, regardless of the amount each party seeks, is reasonable relative to the actual damages of the breaching sales of the SA."

---

[1] The '415 patent recited 16 methods and a single product-by-process which related to making certain curcuminoids, that is, a turmeric nutraceutical.  The product-by-process claim was the only one directly infringed by Prakruti's sales of the .curcuminoid product in the U.S.

[2] Both the License and the Settlement Agreement stated New Jersey law governed.

[3] *Wasserman's Inc. v. Twp. of Middletown*, 137 N.J. 238, 247–48 (1994) in which the New Jersey Supreme Court mapped out a 4-factor test to determine the reasonableness of a liquidated damages clause, the fourth factor being actual damages sustained by the plaintiff for breach of the agreement.  *See* the Default Judgment Opinion at Doc. No. 352:21-26 for an exposition of the *Wasserman* test and this Court's application of it to determine whether the SA liquidated damages clause is reasonable under New Jersey law.

2.0     **Parties Submissions Generally**

As defendant Prakruti has filed no submission in response to the Court's request, the following discussions focus on Sabinsa's submission (Doc. No. 357, Sealed).  In its previous submissions seeking default judgment (Doc. No. 334  and 341, both Sealed), Sabinsa sought $15,042,800 in liquidated damages.[4]   In its current submission, Sabinsa calculates  as lost profits as discussed below and asserts this is comparable to the requested $15,042,800 in liquidated damages.

The bare bones structure of Sabinsa's submission is that it:

- posits lost profits from each of the four periods listed below,
- adds these all together to reach $14,908,355,
- hypothesizes this number approximates its  actual damages,
- argues this lost profits number compares reasonably to the requested liquidated damages of $15,042,800, which the Court should award.

The problem with this structure is that it does not provide what the Court requested, i.e., a showing that the requested liquidated damages have a rational and reasonable relationship to its contract losses plus a reasonable pay-back.  Instead of  showing how the $15,042,80 has a rational relationship to its actual damages, Sabinsa's methodology does the opposite:  it starts from the unexamined premise that the liquidated damages clause of the SA reasonable and never directly addresses this premise.     In effect, Sabinsa's submission works backward to estimate its actual damages in a way that overinflates them but nonetheless approximates the liquidated damages.

Specifically, Sabinsa's submission postulates a 15-year period of Prakruti's proposed infringement and breach of the SA, starting from  mid-July 2008 to the end of December 2023.  It estimates an amount of lost profits of $14,908,355 by assuming a continuous rate of "infringement/breaching" over the entire fifteen year period.  Without justifying how the estimate of $14,908,355 in lost profits suffices as an accurate measure of its actual damages, Sabinsa avers the estimated lost profits compares favorably to the requested $15,042,800 and concludes e the liquidated damages amount can only be  reasonable.


3.0     **Sabinsa's Submission in Greater Detail**

To justify its requested liquidated damages, Sabinsa adopts these steps:

---

[4] Calculated as $10,000 (the liquidated damages amount) times 1,504, the number of kilograms Prakruti's own evidence showed it had sold during the Settlement Agreement period.   To be clear, Prakruti's own records demonstrate its sale of 1,504 kilograms of curcuminoid product in breach of the Settlement Agreement.   Sabinsa therefore used that number to calculate the liquidated damages amount.

**1 ) Estimate Total Damages Period:  how many days Prakruti likely could have  infringed the '415 patent or could have breached the SA**

- pre-lawsuit damages period from 30 July 2008 to 30 July 2014[5]                = 2,191 days
- lawsuit damages period from 30 July 2014 to 7 January 2015[6]               =   161 days
- **pre-settlement damages period** from 30 July 2008 to 7 January 2015        = 2,352 days (2,191 + 161)
- settlement damages period from 7 January 2015 to 14July 2016[7]             =   552 days
- **post-settlement period** from 14 July 2016 to end of 2023                  = 2,759 days

**Total Damages Period**                                                       **= 5,632 days (2,352 + 2759)**

By summing these period together, Sabinsa is implicitly arguing that Prakruti caused damages to Sabinsa for 15 ½ years.   The Court looks more closely at how Sabinsa justifies including each period.

### Pre-Lawsuit Damages Period From 30 July 2008 To 30 July 2014 = 2191 days

Sabinsa's 5,632 days of total damages starts with the assumption that Prakruti infringed the '415 patent every day for the 6 years from 30 July 2008 to 30 July 2014.   Although not an exclusive licensee of the '415 patent until 30 July 2014, Sabinsa relies on 35 U.S.C. §286 to invoke the federal, six-year statute of limitations within which to sue for infringement.   That is, in assuming  Prakruti's daily infringement in the U.S. for the 6 years before it became an exclusive licensee, Sabinsa adds 2,191 days of actual damages it is due but provides no actual evidence or justification of such eligible infringement.  Rather, Sabinsa infers such based largely on Prakruti's spoliation behavior during the discovery period from June 2017 to the Magistrate Judge's adverse inference in December 2018.   Put simply, Sabinsa appears to assume that, since Prakruti hid, manipulated, or destroyed evidence of its likely infringing sales during the settlement damages period from 7 January 2015 to 12 July 2016, Prakruti must have done so for the six years previously (30 July 2008 to 30 July 2014.   Therefore, Sabinsa is entitled to infringement damages for the entire pre-lawsuit period.

### Lawsuit Damages Period From 30 July 2014 To 7 January 2015 = 161 days

The 161 days of this period extends from Sabinsa's filing  of the patent infringement lawsuit to the execution of the Settlement Agreement,  whereby Sabinsa and Prakruti ended the litigation in favor of Prakruti's filling all its sales orders through Sabinsa, else be liable for liquidated damages.

---

[5] Sabinsa justifies using this 6 year period to calculate infringement damages because it became an exclusive licensee of the '417 patent on 30 July 2014.  Under 35 U.S.C.  §286 , it can sue for possible infringement for the previous 6 years.

[6] The period is from Sabinsa's filing the patent infringement lawsuit against Prakruti to execution of the Settlement Agreement.

[7] The period from the execution of the Settlement Agreement to expiry of the '415 patent.

**Settlement Damages Period From 7 January 2015 to 14 July 2016 = 552 days**

The 552 days of damages in this period accrue from Sabinsa's assumption that Prakruti sold breaching product every day the settlement agreement was in force, which thereby invokes the liquidated damages clause. .

**Post Settlement Damages Period from 14 July 2016 to 31 Dec 2023 = 2,759 days**

The 2,759 days of damages in this period extend from the expiry of the '415 patent to the end of December 2023. Simply, Sabinsa assumes it has lost worldwide sales of curcuminoid product for 7 ½ years from the expiry of the '415 patent because it did not lock in exclusive sales to Prakruti's customer base owing to Prakruti's breach of the settlement agreement. Sabinsa's assumption relies on the unjustified and unstated belief that, had it been able to garner Prakruti's customers during the settlement period, it would never have lost them to Prakruti or another competitor.

**2) Total Projected Amount of Prakruti Sales During the Period When Sabinsa Seeks Damages**

From Prakruti's records of sales during the Settlement Damages Period of 552 days, Sabinsa postulates Prakruti sold during a daily amount of 23.22 Kg/day of breaching, curcuminoid product. Sabinsa multiplies this daily average by the total number of days in the fifteen year period during which Sabinsa seeks damage to arrive at the postulated number, as shown.

$$23.22 \text{ kgs / day  X  } 5,632 \text{ days} = 130,775 \text{ kgs}$$

This amount is just Sabina's extrapolation of infringing product, SA breaching product, and lost opportunity product that Prakruti could have sold from July 2008 to December 2015. It is Sabinsa's estimate of lost product that Sabinsa uses to postulate actual damages over the 15 years it projects loss.

**3) Enhanced Lost Profits Calculations**

Relying on the memorandum opinion in *Sabinsa Corp. v. Olive Lifescience Pvt.* Ltd., No. 14-4739, Doc. No 131, Sealed, Sabina multiplies the trebled, lost profit rate of $114.00/kg (approved by Judge Simandle) by 130,775 kilograms postulated in step 2 above. Sabinsa's calculation is as shown:

**$114.00/kg  x 130,775 kg  = $14,908,355, Sabinsa's estimate of lost profits, i.e., actual damages.**

**4)      Comparison of Lost Profits (Estimated Actual Damages) with Liquidated Damages**

In comparing its postulated lost profits of $14,908,355 with the liquidated damages of

$15,042,800,  Sabinsa finds the difference of  $131,645 to be  miniscule, which justifies that it is owed the full liquidated damages amount of $15,042,800.  The lost profits calculation reasonably approximates what its actual damages must be.

**4.0    DISCUSSION**

The Court understands that the liquidated damages clause in the Settlement Agreement arose from Sabinsa's clear expectation of expanding its distributorship network during the SA period, 07 Jan 2015 to 14 July 2016.  That is, the SA obligation that Prakruti sell its product ONLY to Sabinsa for the eighteen months of the settlement agreement meant Sabinsa would be filling Prakruti's customer orders during that period and presumably taking these over.  Having access to Prakruti's customer list for eighteen months was a far more interesting and valuable pathway than continuing with the infringement litigation, as Sabinsa attested in its Reply in Support of Default Judgment.  Doc. No. 341, Sealed.  The restrictions on Prakruti worldwide sales would give Sabinsa not only access to Prakruti's customers but also a continued, enhanced revenue stream beyond the SA period.  That is, the SA gave Sabinsa unrestricted access to Prakruti's customers for 18 months with the expectation that Sabinsa would retain them.

The Court takes official notice of facts relaying more accurately the corporate reality of defendant Sabinsa Corporation.  Specifically, the very large Sami-Sabinsa Group[8]  is in the business of worldwide manufacturing and distribution of nutraceutical and cosmeceutical products.  It is headquartered in India, owned the '415 patent granted in the U.S. and licensed it exclusively to Sabinsa, its distribution subsidiary in the U.S.,  presumably to capitalize on the U.S. patent monopoly.

Prakruti is also headquartered in India and is a large, protean, and presumably sophisticated corporate player in the worldwide nutraceutical market as Sami-Sabinsa, of which the Court also takes official notice.[9]  Nonetheless, all of Prakruti's manufacturing and processing takes place in India, even though their products are distributed worldwide.

To sum, the Court takes official notice that the corporate reality of these two parties is that Sami-Sabinsa and Prakruti are competitors in distributing nutraceuticals world-wide but not equal in terms of world-wide manufacturing facilities or scale of distribution.  The Court notes that Prakruti, while a clear competitor to Sabinsa in terms of distribution, may not have been in a precisely equal bargaining position with Sabinsa when these parties executed the Settlement Agreement.

---

[8] https://sabinsa.com/ , last accessed 25 May 2024.
[9] https://prakruti.com/ , last accessed 25 May 2024.

The Court reviews its finding in the Default Judgment Opinion regarding the *Wasserman*[10] prong of whether the parties were equally sophisticated when the SA was negotiated. *See* Doc. No. 352:22-26. The Court's richer understanding of the corporate reality between these parties alters not one whit this Court's decisions: Default Judgment against Prakruti, based upon the adverse inference of Prakruti's spoliation; the Magistrate Judge's order (Doc. No. 287) that Prakruti must pay Sabinsa $994,803.29 for Sabinsa's attorney fees and costs to discover Prakruti's spoliation; and the Order (Doc. No. 295) denying Prakruti's appeal of the spoliation fees order.

However, this altered view of the parties' corporate reality is important because New Jersey law regarding enforceability of liquidated damages is clear:

> Whether a liquidated damages clause is enforceable is a question of law for the court and "[t]he burden of proof is upon the party challenging the liquidated damages clause." *Naporano Assocs., L.P. v. B & P Builders,* 309 N.J.Super. 166, 175, 706 A.2d 1123 (App.Div.1998). Under New Jersey law, " 'reasonableness' emerges as the standard for deciding the validity of stipulated damages clauses." *Wasserman's Inc. v. Middletown,* 137 N.J. 238, 249, 645 A.2d 100 (N.J.1994). "[T]he difficulty in assessing damages, intention of the parties, the actual damages sustained, and the bargaining power of the parties all affect the validity of a stipulated damages clause." *MetLife Capital Fin. Corp. v. Washington Ave. Assocs. L.P.,* 159 N.J. 484, 495, 732 A.2d 493 (1999) (citing *Wasserman's,* 137 N.J. at 250–54, 645 A.2d 100). "In short, [t]he overall single test of validity is whether the [stipulated damage] clause is reasonable under the totality of the circumstances ...." *Id.* at 494 (internal quotations omitted).

*Days Inn Worldwide, Inc. v. BFC Management, Inc.,* 544 F.Supp.2d 401, 406 (D.N.J. 2008) [*granting* requested liquidated damages in an intellectual property infringement context because the liquidated damages clause at issue was deemed reasonable].

Also, under New Jersey law:

> " liquidated damages clauses may only be enforced if they reasonably forecast the harm resulting from breach." *Knights Franchise Sys., Inc. v. First Value RC, LLC*, Civ. No. 13-4976, 2017 WL 1170849, at *3 (D.N.J. Mar. 29, 2017) (citing *Wasserman's Inc. v. Twp. of Middletown*, 645 A.2d 100, 106 (N.J. 1994)). "Whether a liquidated damages clause is enforceable is a question of law for the court to decide." *Ramada Worldwide Inc. v. Columbia SC Hosp., LLC*, Civ. No. 17-13020, 2018 WL 3105421, at *5 (D.N.J. June 25, 2018) (citing *Naporano Assocs., L.P. v. B&P Builders*, 706 A.2d 1123, 1127 (N.J. Super. Ct.

---

[10] *Wasserman's Inc. v. Middletown,* 137 N.J. 238, 249, 645 A.2d 100 (N.J.1994). *See* the Default Judgment Opinion, Doc. No. 352: 22-26, setting forth a four-prong test for the reasonableness of a liquidated damages clause.

App. Div. 1998)).”

*Howard Johnson International, Inc. v. Manomay, LLC*,  No: 16-7621-SDW-LDW, 2019 WL 3214165 at *
(D.N.J.  17 July 2019*).*

     The Court notes that Prarkuti's bargaining position may not have been entirely equal with that
of Sabinsa when the SA was negotiated and also that it is Prakruti's burden to challenge Sabinsa's
assertions about reasonableness of the liquidated damages.  *Days Inn Worldwide*, 544 F.Supp.2d at 406.
Because of these two contrasting considerations, the Court is prompted to double down in its analysis
of the details and assumptions underlying Sabinsa's assertions that the requested liquidated damages
amount is reasonable.


**5.0     RECALCULATING SABINSA'S LIQUIDATED DAMAGES**

     Bringing all these considerations to bear,  the Court finds Sabinsa has not met its request to
demonstrate the reasonableness of $15,042,800 in liquidated damages for a reported breaching
amount of 4200 kilograms.   Rather, Sabinsa relies on several, unsupported assumptions that
overinflate its losses, namely:

- that a 15-year period faithfully covers Prakruti's infringement, breach of the SA, and Sabinsa's lost
  opportunity;
- that an average daily kilogram amount used to extrapolate the sales of Prakruti during that 15-year
  period authentically approximates Sabinsa's actual damages;

There are other such assumptions but the Court regards these as most relevant.

     The essential observation in the request for $15,042,800 in liquidated damages is that it is
astronomically out of proportion with the amount of reported, actual damages of $15,042.80.  To be
clear, the liquidated damages clause of the SA expressly demands damages that are 1000 times the
reported, actual damages.  The liquidated damages term can not be deemed an approximation of
actual damages that admittedly are difficult to calculate.

     Even if lacking a hard and fast rule about when liquidated damages are or not reasonable, New
Jersey caselaw clearly illustrates when a liquidated damages clause is a penalty and not an
approximation of actual damages admittedly difficult to calculate.  See *e.g., Century 21 Real Estate LLC
v. All Professional Realty, Inc.*, 889 F.Supp.2d 1198, 1233  (E.D. Cal.2012) where the Court applied New
Jersey law to find there was no clear evidence that the liquidated damages clause of the breached
franchise would compensate  plaintiff **in any excess of actual damages**. Thus, the liquidated damages
and the actual damages could not be determined as different.  *See also Posey v. NJR Energy Ventures
Corporation*, Civ. No. 14-6833 (FLW)(TJB), 2015 WL 6561236 at *7-8  (D.N.J. 29 Oct 2015) where Judge

Wolfson found in a motion to dismiss context that $35,672.00 in liquidated damages granted by the Lease were likely unreasonable given that actual damages of Overdue Rent were $754.60. Pointedly, the liquidated damages in *Posey* were over 47 times the actual damages amount. S*ee also Ramada Worldwide, Inc. v. Rip Management Group Corp.*, Civ. No. 07–1540 (WHW). 2009 WL 1810733 at * (D.N.J. 25 June 2009) where, under New Jersey law, the liquidated damages clause was not unreasonable because the requested liquidated damages were about 2.4 times the total trademark infringement damages..

From this brief review of relevant caselaw, the Court finds the SA liquidated damages clause is unreasonable under New Jersey law.

The other essential observation is that Sabinsa offered no direct justification for that astronomical amount, but rather relied on unjustifiable durations in which to calculate damages. To the point, the Court finds Sabinsa's inclusion of the pre-lawsuit damages period (of 2,191 days from 30 July 2008 to 30 July 2014) unjustified, and therefore unreasonable. In the original complaint in this action, Sabinsa made no allegation of infringement before its exclusive licensee date of 30 July 2014. In fact, the original complaint alleges that Prakruti sold its curcuminoid product to Herbakraft which was selling it in the U.S.[11] Moreover, the original complaint appears to allege Prakruti's infringement is indirect as the complaint avers Prakruti sold the product to Herbakraft, which sold the product in the U.S.

In addition, Sabinsa's inclusion of the post-settlement period (of 2,759 days from 14 July 2016 to 31 Dec 2023) gilds the lily with unreasonable lost opportunity expectations. This is because of the completely unsupported and unarticulated assumption that once Sabinsa had gotten hold of Prakruti's customer list, it would have retained those customers for its own for the entire 7-1/2 year period. When the Settlement Agreement ended with the expiry of the '415 patent on 14 July 2016, so did Prakruti's obligation to sell its product exclusively to Sabinsa. As Sami-Sabinsa (Sabinsa's Indian parent) and Prakruti are competitors in the same nutraceutical market, there is no reasonable expectation that Prakruti would not have exerted itself to regain whatever customers it may have lost to Sabinsa. The Court chooses not to indulge Sabinsa's fantasy that the 18 month period of exclusive, worldwide sales to Prakruti's customers entitles it to a full 7-1/2 years of lost opportunity damages. Accordingly, the Court discounts both the pre-lawsuit period of 2,191 days and the post-settlement period of 2,759 days.

That leaves a total of 682 days in which to calculate Sabinsa's lost opportunity damages.[12] These 682 days are referred to herein as the "infringing/breaching period". Using Sabinsa's estimate of 23.22 kilograms of curcuminoid product Prakruti is assumed to have sold each day and multiplying that

---

[11]Herbakraft also settled out of the infringement in 2015 and has not re-appeared.

[12] 161 days of the lawsuit damages period from 30 July 2014 to 7 January 2015 and 552 days of the settlement damages period from 7 January 2015 to 14July 2016.

by 682 days, the Court finds Prakruti could have sold 15,836 kilograms of infringing/breaching curcuminoid product, as shown:

**682 days  X   23.22 kgs/ day  =  15,836 kgs of Prakruti curcuminoid sales in the infringing/breaching period**

Ironically, this number equals somewhat more than 3 times the number of kilograms that Sabinsa actually discovered Prakruti had sold during the Settlement Agreement, a period of 582 days, or about 80% of the infringement/breaching period.  Thus, the Court appreciates that on its face the metric of 23.22 kgs/ day may overinflate the actual number of kilograms Prakruti sold during the infringement/breaching period, but considers that this overinflation may work to compensate Sabinsa more fully for its lost opportunities beyond the infringing/breaching period.

The Court also relies on Sabinsa's metric for treble damages, i.e., $114.00 kg, taken from *Olive Lifesciences*.  The Court agrees that treble damages are only appropriate "if the defendant's infringement was intentional, knowing, or willfully blind." *Travelodge Hotels, Inc.*, 2016 WL 5899281, at *6 (citing *Microsoft Corp. v. CMOS Techs.*, 872 F. Supp. 1329, 1339–41 (D.N.J. 1994).  The *Olive Lifesciences* guidance relates only to applying a treble damages multiplier to known sales of infringing product.  It cannot inform on the Court's calculations of damages for sales made during the breaching period. That is, although Prakruti's spoliation efforts were clearly intentional and merit Sabinsa's spoliation award **during the post settlement period**, Sabinsa asserts no evidence of Prakruti's intent, knowledge, or willful blindness **during the breaching period.** Thus, applying a treble damages multiplier to estimated sales during the breaching period is not warranted.

Sabinsa does no more than point out Prakruti's spoliation behavior in the post-settlement period automatically infers Prakruti's retroactive intent during the breaching period.  Such argument insufficiently demonstrates intent.  The Court therefore estimates Sabinsa's actual damages in the infringing/breaching period using two separate calculations, as shown, one that applies treble damages multiplier of $114/ kg for infringing sales and one that applies the regular multiplier of $98 (average price of Prakruti product) for breaching sales.

$114 / kg  X  161 days  X 23.22 kg / day = **$  426,179.88, Damages in infringing period**
$ 98 / kg[13] X  562 days  X 23.22 kg/ day = **$1,278,864.72, Damages in breaching period**
                                                          _____
                                     **$1,705,044.60, Total damages in infringing/breaching period**

To justify Sabinsa's expectation of retaining Prakruti's customers for at least some part of the

---

[13] The $98 / kilo is the average price of Prakruti's curcuminoid product sold during the breaching period, as shown in Doc. No. 357-2, Exhibit 1, Sealed.

post settlement period, the Court postulates Prakruti would have recaptured some of customers but only after a period equal to the Settlement Period, that is, of 582 days.   The Court's assumption is based on its recognition that the Settlement Agreement gave Sabinsa access to Prakruti's customer base for 562 days and, had Prakruti abided by the SA, it may have taken Prakruti that long to recapture its lost customers.   Of essence here is the Court's assumption that Sabinsa would neither have acquired all of Prakruti's customers nor kept them permanently.  The Court postulates a reasonable lost opportunity damages amount equals an additional  damage period of 582 days or an additional $1,278,864.72 in damages.   Thus the Court has postulated  the total number of days when Sabinsa reasonably accrued damages is calculated as  682 + 582 and equals 1244 days.

The corresponding total estimate of damages due Sabinsa from the infringing/period of 6682 days and the post settlement period of 582 days is as shown:

> $1,705,308.56, Sabinsa's damages from the infringing/breaching period of 682 days

+   $1,278,864.72, Sabinsa's lost opportunity damages in post-settlement period of 582 days
_____

= **$2,984,173.28, Sabinsa's total damages from the infringing/breaching period and the  post-settlement period.**
Importantly, the **$2,984,173.28**, when divided by Prakruti's reported sale of 4200 kilograms, yields a cost of about $710 per kilogram, which is less than about 7.2 times the average price of Prakruti's breaching kilograms that Exhibit 1 evidences.

Accordingly, the Court finds that its reworked estimate of liquidated damages of $2,984,173.28 stands as a reasonable approximation of Sabinsa's actual damages and lost opportunity during the reasonable duration of 1244 days or 3.4  years.   Therefore, the Court grants Sabinsa damages in the amount of $2,984,173.28 as a substitute for the unknown actual damages caused by Prakruti's breach of the Settlement Agreement and its liquidated damages clause.

### 6.0    CONCLUSION

Sabinsa's request of $15,042,800 in liquidated damages for Prakruti's breach of the Settlement Agreement is denied because it is unreasonable under New Jersey law.  Instead, this Court has recalculated a reasonable liquidated damages amount that carefully and fully considers the durations when Prakruti was infringing the '415 patent,  breaching the Settlement Agreement, or engendering Sabinsa's loss of post-settlement sales.  The recalculated liquidated damages amount is $2,984,573.28.

This Court grants Sabinsa liquidated damages in the amount $2,984,173.28 to satisfy the Default Judgment (Doc. No.  357) against Prakruti.  There remaining no further issues to be resolved in

this action, the Court orders that the Clerk of the Court shall close it.

Dated: 31 May 2024                                    /s Robert B. Kugler
                                                     Honorable Robert B. Kugler
                                                     United States District Judge